LEOPOLD M. MICHAEL v. ROSA MICHAEL.

Decided February 24, 1904.

**1.—Statute Construed—Divorce—Residence.**

Revised Statutes, article 2978, providing for six months residence next preceding the filing of suit for divorce in the county in which such suit is filed, construed, and the word "reside" held to mean an actual residence as distinguished from a legal or constructive one. Haymond v. Haymond, 74 Texas, 414, followed.

**2.—New Cause of Action—Pleading.**

Where the original petition in a suit for divorce alleged cruel treatment and amendments afterwards set up, in addition, abandonment and adultery, such amendments set up a new cause of action and the residence of the petitioner for the six months next preceding the time of filing the last amendment must govern the question of her right to sue for divorce in the county in which she did.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*C. K. Breneman* and *Chas. W. Ogden,* for appellant.

*Carlos Bee, Geo. R. Gillette, Henry C. King, Jr., Wm. Aubrey,* and *W. A. Wurzbach,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit for divorce and partition of community property, instituted by appellee against her husband Leopold M. Michael, the Michael Loan Co., R. Gabrieski, Louis M. Michael and Sam Berliner, all but the husband being joined for the purpose of obtaining the annulment of alleged fraudulent transfers of property made to them by the husband. The court submitted the full case to the jury on special issues, which were all answered in favor of appellee, but the court only granted a divorce on the answers and refused to enter a judgment as to the property. This appeal is perfected from the judgment granting a divorce.

Appellant filed a plea to the jurisdiction of the court on the ground that appellee was not an actual bona fide inhabitant of the State of Texas, and had not resided in Bexar County for six months next preceding the filing of the suit.

Jurisdiction, by the concurrence of English and American courts, in divorce suits is founded on residence or domicile. Andrews v. Andrews (Mass.), 57 N. E. Rep., 333; Branch v. Branch (Colo.), 71 Pac. Rep., 632.

The State of Texas has enacted laws regulating and controlling matters of marriage and divorce, and has prescribed rules as to domicile, as to procedure in trials and as to rules of evidence which apply to no other class of cases in its courts. For instance, no other class of litigants is required to be residents of the State in order to have the authority to institute suits; in no other case, when the parties are in court, is

a judgment by default forbidden, and a judgment permitted only "upon full and satisfactory evidence."

In article 2978 of the Revised Statutes it is provided: "No suit for divorce from the bonds of matrimony shall be maintained in the courts unless the petitioner for such divorce shall, at the time of exhibiting his or her petition, be an actual bona fide inhabitant of the State, and shall have resided in the county where the suit is filed six months next preceding the filing of the suit."

In article 3268 of the Revised Statutes it is provided, that in the construction of statutes the ordinary signification shall be applied to words, and in commenting on that provision the Supreme Court said: "It is the duty of a court to give to language used in a statute the meaning with which it was used by the Legislature, if this can be ascertained, and to do this, if the words be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the Legislature must be presumed to have used them in that sense in which they are ordinarily understood; and if so applying them the legislation in which they are found seems to be harsh or not to embrace and give remedies for acts for which remedies ought to be given, the courts for such reasons are not authorized to place on them a forced construction for the purpose of mitigating a seeming hardship imposed by a statute, or conferring a right which the Legislature has not thought proper to give." Turner v. Cross, 83 Texas, 218.

It is evident that if the plain, ordinary signification of the word "resided" used in the statute is given to it that it would necessarily be construed to require an actual living in the county for six months immediately preceding the filing of the suit. The word "reside" in its ordinary sense carries with it the idea of permanence as well as continuity. It does not mean living in one place and claiming a home in another. It does not mean a constructive or imaginary residence in Texas, while actually living in Illinois. It was intended by the statute not only to compel an actual, good faith inhabitancy of this State, but an actual residence in the county where the suit for divorce is instituted upon the part of the party seeking the divorce.

In the construction of similar statutes in several other States it has been held that the residence contemplated by the statutes is an actual residence and not a mere legal residence or one based upon a mere intention to return to the State while residing elsewhere. In the case of Tipton v. Tipton, 8 S. W. Rep., 440, the Supreme Court of Kentucky said: "There is a broad distinction between a legal and an actual residence. A legal residence (domicile) can not, in the nature of things, coexist in the same person in two States and countries. He must have a legal residence somewhere. He can not be a cosmopolitan. The succession to movable property, whether testamentary or in the case of intestacy, except as regulated by statute; the jurisdiction of the

probate of wills; the right to vote; the liability to poll tax and to military duty, and other things, all depend on the party's legal residence or domicile. For these purposes he must have a legal residence. The law will, from facts and circumstances, fix a legal residence for him, unless he voluntarily fixes it himself. His legal residence consists of fact and intention; both must concur; and when his legal residence is once fixed, it requires both fact and intention to change it. As contradistinguished from his legal residence, he may have an actual residence in another State or country. He may abide in the latter without surrendering his legal residence in the former, provided he so intends. His legal residence for the purposes above indicated may be merely ideal, but his actual residence must be substantial. He may not actually abide at his legal residence at all; but his actual residence must be his abiding place. His legal residence subjects him to the duties, and confers upon him the rights and privileges above mentioned. * * * According to these views, we think that the residence required by the section of the code means that of an actual residence; and that a mere legal residence in this State, with an actual residence out of the State, is not sufficient to entitle the appellant to maintain his action." The statute referred to in the opinion required "a residence in this State for one year next before the commencement of the action" and the Texas statute requires that the plaintiff "shall have resided in the county where the suit is filed six months next preceding the filing of the suit."

We think the Kentucky decision is sustained by the opinion in the case of Haymond v. Haymond, 74 Texas, 414, in which the law of Texas as to the class of residence required in divorce cases is discussed. The court said: "We do not think that a temporary absence from the State or county of an inhabitant of the State during the six months next preceding the filing of his petition for divorce would affect his right to maintain it. We think, however, that there may be such residence abroad, without the loss of citizenship or domicile for other purposes, as will cause the provisions of the statute referred to to be applicable and deprive the party to maintain a suit for divorce in our courts. * * * One condition to which a party seeking a divorce in this State is subject is that he must reside in the county in which he brings his suit for the six months next preceding the filing of his petition. The fact that he was at some previous time a citizen and actual inhabitant of the State, and for six months and more a resident of the county, in no manner affects the question. When the facts required to exist by our statutes are not established by the evidence a decree of divorce should be refused.

To hold that an actual bona fide inhabitancy of the State coupled with a constructive residence in the county for six months is sufficient under the statutes under consideration, would be to construe the statute to mean that a legal residence in the State, although the plaintiff may not have visited it for years until the time he exhibits his petition for

divorce, will give him the right to prosecute his suit if at the moment he is an actual bona fide inhabitant of the State. Such a construction renders the requirement as to the six months residence superfluous at least so far as anyone who has once lived in Texas and has never fixed a legal residence in some other State or country is concerned, although he may not have entered the borders of Texas for fifty years before the moment he files his petition for divorce, and is, we think, opposed to the view of the Supreme Court in Haymond v. Haymond.

The facts in this case show that in 1882 appellee, with the consent of her husband, went to Chicago, Ill., with her children, and remained there continuously until February 24, 1898. When she returned in 1898 she first consulted a lawyer and then visited and offered to return and live with her husband, but he refused to live with her. She remained three months and returned to Chicago and came back to San Antonio on October 3, 1898, and filed the original petition in this suit on December 22, 1898. At that time she had not been in Texas but three months for over sixteen years, and if the construction of the statute in Haymond v. Haymond be correct, she had not been a resident of Bexar County for six months preceding the filing of the suit.

It is a rule of law that the domicile of the husband is the domicile of the wife and would so remain so long as he was not guilty of the offense which is the cause for separation or divorce, and it may be conceded for the purposes of this case that until February 24, 1898, when appellant abandoned appellee, his actual residence in Bexar County was her actual residence. After that time, however, her residence in Bexar County, within the purview of the statute, depended on her actual residence for a period of six months prior to the filing of the suit. Nelson on Marr. and Div., sec. 48; Bailey on Jur., sec. 270. It would not matter what her intentions were in returning to and remaining in Chicago; they could only affect her legal residence and could not answer the demands of the statute as to an actual, as opposed to a constructive, residence in Bexar County. Jones v. Jones, 60 Texas, 451. A continuous actual residence in that county was required, and a constructive residence did not meet the demands of the statute. She had been living in Illinois for sixteen years prior to 1898, and had no residence in Texas legal or otherwise except through her husband, and when the abandonment took place she was clothed with the privilege of choosing her legal as well as actual residence. She chose to actually reside in Chicago, and in order to acquire the right to sue for a divorce in Texas, she had to return and become an inhabitant in good faith of the State and reside in some county therein for a period of six months previous to filing her suit. This she did not do, and there was no evidence justifying the submission of that question to the jury.

If the allegations in the original petition were sufficient to constitute any cause for divorce, it was on the ground of cruel treatment. Five amendments were filed to that petition, none of which appears in the record, except the last, in which three years' abandonment, cruel

treatment and adultery were alleged. The court treated the amendment as a mere amplification of the original petition and made the matter of jurisdiction of the court turn upon the facts concerning the domicile of the appellee at the time of filing the original petition. If the amendment was but a continuation of the original suit the charge submitted the proper issue; if, however, the amendment was such as to change the cause of action so that it was the institution of a new suit, the question as to the bona fides of appellee's inhabitancy of Texas and her residence for six months in Bexar County preceding the filing of the fifth amended petition, on January 20, 1902, was the one to be considered. We think the amendment set up a new cause of action. Even though appellee had the statutory residence in Texas to authorize the original suit, she might in the three years after that time have lost such residence so far as the institution of a new suit was concerned. The case must be viewed as though no suit had been filed until January 20, 1902, and the facts as to the residence were such that they should have been submitted to a jury to determine whether appellee was an actual bona fide inhabitant of Texas and had resided in Bexar County for six months prior to January 20, 1902. The court could not have charged the jury that jurisdiction had been established as to the new cause of action, because the uncontradicted facts did not show it. Appellee remained in Texas eight months, from October, 1898, to October, 1899, the rest of the time being passed in Chicago. She then remained in Texas until about April 1, 1901, when she returned to Chicago and remained for nearly two years. Appellee said: "After coming here in October, 1898, I remained here eight months and then went back to Chicago during the summer months and remained there until the following October. Then I came back here and stayed here eighteen months, and then went back to Chicago. I stayed there nearly two years." According to that testimony appellee had not been in Bexar County for over nine months before January 20, 1902. It is true in another part of her testimony she stated that she returned to San Antonio on April 26, 1901, and remained for eighteen months, that is, up to October 26, 1902, and yet in another place said she was away from Bexar County from June 21, 1902, until the first week in September. Her place of residence from 1899 until January 20, 1902, is left in grave doubt by the testimony. The right to prosecute the suit depended not on appellee's domicile in 1898, but on her domicile in January, 1902, when she instituted the present suit.

The motion for a rehearing is granted, our former opinion is withdrawn, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*