## McLEAN et al. v. RANDELL et al.†

(Court of Civil Appeals of Texas. Feb. 25, 1911. Rehearing Denied March 25, 1911.)

1. DIVORCE (§ 62*)—RESIDENCE—PLEADING.

In a suit for divorce, residence in the county where the suit is brought for six months next preceding the bringing of the suit, as required by Rev. St. 1895, art. 1194, § 16, and article 2978, must be alleged and proved.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 62.*]

2. ATTORNEY AND CLIENT (§ 167*)—COMPENSATION—ACTION—QUESTION FOR JURY.

In an action by attorneys against a husband and wife to recover attorney's fees incurred by the wife in bringing and maintaining a divorce suit which was finally dismissed, where the husband contended that plaintiffs brought the action for divorce in bad faith, in that they instituted it in a county in which the wife had not been a resident for six months prior to the beginning of the action, evidence *held* to present a question for the jury as to whether the wife had in fact resided in the county in which the divorce suit was brought six months before the beginning of the action.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 167.*]

3. DIVORCE (§ 66*)—VENUE—RESIDENCE.

Where a wife leaves her husband with the intention of permanently separating from him, she is free to choose the residence which shall determine the proper venue of a suit for divorce.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 227–231; Dec. Dig. § 66.*]

----

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court April 26, 1911.

**4. DIVORCE (§ 66*)—VENUE—RESIDENCE.**

Where a wife, after abandoning her husband, went to reside temporarily with her daughter in another county, she did not thereby lose her residence in the county where her husband resided so as to defeat the jurisdiction of the court of that county of an action for divorce subsequently brought by her.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 227–231; Dec. Dig. § 66.*]

**5. TRIAL (§ 260*)—INSTRUCTION — REQUEST—REPETITION.**

A requested charge which is embodied in the charge as given is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**6. DIVORCE (§ 198*)—EXPENSES OF WIFE—ATTORNEY'S FEES—GOOD FAITH.**

In an action by attorneys against a husband for fees for services for his wife in a divorce suit, evidence *held* to present a question for the jury whether the attorneys were acting in good faith in bringing suit for divorce.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 584; Dec. Dig. § 198.*]

**7. DIVORCE (§ 197*)—EXPENSES OF WIFE—ATTORNEY'S FEES.**

In a divorce suit by a wife, where a probable cause exists that she is entitled thereto, her husband is liable for attorney's fees contracted by the wife; such fees being necessary for the protection of the wife's rights under the law.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 582, 583; Dec. Dig. § 197;* Husband and Wife, Cent. Dig. § 137.]

**8. COMPROMISE AND SETTLEMENT (§ 5*)—OFFER AND ACCEPTANCE.**

An action against a husband for attorney's fees for services for his wife in divorce proceedings is not defeated by an unaccepted offer made by the attorneys to the wife to cancel their claim for attorney's fees if she would pay a stenographer's fee incurred by them without her consent in preparing a transcript of the evidence for use on a motion for a new trial.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. § 12; Dec. Dig. § 5.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by C. B. Randell and another against E. C. McLean and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Don. A. Bliss and J. P. Leslie, for appellants. Jas. P. Haven, for appellees.

RAINEY, C. J. Appellees brought this suit against the appellants E. C. McLean and Rena M. McLean to recover $2,500 for services rendered Rena M. McLean as attorneys in a divorce suit brought by said Rena M. McLean against said E. C. McLean in the district court of Grayson county, Tex. E. C. McLean answered by general and special demurrers, general denial, and specially that, he and his codefendant being at the time husband and wife, she could not bind him by her acts, agreements, or contracts as set forth in plaintiff's petition; also, that plaintiffs had made a proposition in writing to Rena M. McLean that, if she would reimburse them in the sum of $266 for expenses incurred by them, they would willingly dismiss the divorce suit without payment to them of any attorney's fees; and that said proposition was accepted, said sum paid to them and said suit dismissed, and therefore plaintiffs are not entitled to recover. Rena M. McLean answered by general and special demurrers, general denial, and specially coverture, and setting out various matters to show that plaintiffs were not acting in good faith in filing the suit for divorce, and the payment of $266 upon the dismissal of said suit. A trial resulted in a verdict and judgment in favor of plaintiffs for $1,000, and defendants prosecute this appeal.

The first, second, third, and fourth assignments complain of the refusal of the court to give certain instructions, and are grouped by appellants and presented as embracing the same questions of law under the testimony.

The instructions are, in effect, that the evidence does not authorize a verdict for plaintiffs, and that the court erred in submitting to the jury the question whether or not Rena McLean had the right to maintain the divorce against E. C. McLean in Grayson county.

One of the defenses urged against a recovery by plaintiffs was the want of good faith in the prosecution of the divorce suit in Grayson county; Rena McLean not having been a resident of said county for six months next preceding the bringing of divorce suit, and the court in which the divorce suit was brought had no jurisdiction, which was known both to plaintiffs and Rena McLean at the time suit was brought. E. C. McLean and Rena McLean resided in Sherman, Grayson county, as husband and wife from 1879 until 1902, when E. C. McLean went to Beaumont, leaving his wife behind, who followed him in a short time. They lived in Beaumont until August 5, 1905, when McLean and his wife went back to Sherman. On November 25, 1905, Rena McLean left her husband, and on November 27, 1905, her petition for divorce was filed in Grayson county. On February 6, 1906, she filed in said suit an amended petition, setting up practically the same grounds for divorce as in the original petition. Said cause pended from its filing until November, 1907, when at the instance of Rena McLean it was dismissed. During said time there were four trials. The first trial resulted in a verdict for the defendant. A new trial was granted, then there was a mistrial, and two trials resulted in hung juries.

E. C. McLean testified: "When I went to Beaumont and engaged in the practice of law, I had no intention as to returning to Sherman at all. My intention was to stay at Beaumont if it suited me, and my idea was, if it didn't suit me, then I would come back to Sherman. It suited me until I

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

stayed there three years, and I would have stayed then until yet if I hadn't got into trouble with Gordon. I was trying a case in Galveston in the federal court and he went and compromised a suit that about ruined me I thought, and I just packed up and came back to Sherman. Prior to that time I had no intention of coming back to Sherman to live. The intention was to stay at Beaumont." On cross-examination he testified: "I stated that I intended to stay in Beaumont if it suited me. If it did not suit me, I intended to return to Sherman. I did return to Sherman after about three years. I returned to Sherman. I reside and propose to reside here and to be buried over there." On the 1st day of December, 1905, three days after the suit was filed, J. H. Wood, one of the plaintiffs, wrote to Mrs. McLean at Beaumont a letter, in which he uses the following language: "The only question that I fear in the proceedings is the question of jurisdiction. However, inasmuch as you resided in Sherman at the time the suit was filed, it could not have been filed any other place. It may have been prematurely brought, but I don't apprehend the question of jurisdiction will be raised. However, we don't want to make a failure of the matter, and if the plea to the jurisdiction be sustained, we will be able to file the suit against right at once, and then carry the matter to a final determination. To do this successfully it is necessary for you to reside in Grayson county, and I would advise you to cut your visit short at Beaumont and come back here." He also testified as follows: "I knew in a general way when they moved to Beaumont. I knew in a general way about the time they returned. At the time that Mrs. McLean came over there and had that interview with me, I think I discussed with her the question as to whether she could maintain this suit in Grayson county. That is my best recollection. I explained to her the difficulty then, and also discussed with her the proposition of whether or not they were only temporarily there, because I understood that they would have to reside in this county six months before the filing of the suit. At the time that I had this conversation the first time with Mrs. McLean at my residence, I knew Mr. McLean had gone to Beaumont, but I didn't know whether he had changed his residence or was there temporarily. * * * I don't know how long Mr. and Mrs. McLean were absent from their home, but I know the same was rented out to Mr. M. B. Pitts for a while, and that Mr. M. B. Pitts had lived there. I don't know just how long they had been gone down there. I say that I have no facts to fix on my mind when they went to Beaumont. Therefore I have no way of knowing. I knew Mr. McLean and his wife had gone to Beaumont. I knew the house was rented, but, as I say, I have no dates or matters that would call my atten-tion to fixing that date. * * * She (Mrs. McLean) maintained that Mr. McLean had always contended that he didn't live in Beaumont, but he was there temporarily, because I considered it was a serious question as to jurisdiction. I told her, if they lived in Beaumont, they had not lived here a sufficient length of time that would give the court jurisdiction, and she maintained that he always claimed Sherman as his home. Then I think my recollection is that possibly the records were looked up, and may be there was one year in which he had taken out his poll tax in Sherman and possibly one he had not. I think I examined the records at her suggestion. * * * I never investigated the question further than what she told me. I explained to her that if she could not show that she had been here six months that her suit would be dismissed."

In the divorce proceeding, Rena McLean testified as follows: "My name is Rena Marrs McLean. I am married. I am married to E. C. McLean. I was married July 2, 1873, in Hickman, Ky. I reside in Sherman, and have resided in Sherman over 25 years." Rena McLean, after leaving her husband in November, 1905, went to Beaumont, and has stayed there with her married daughter until the trial, being in Sherman only during the trials in the divorce suit. Just what her intentions were as to residence the evidence does not disclose.

To maintain a suit for divorce from the bonds of matrimony, the plaintiff must have resided in the county where suit is brought for six months next preceding the bringing of the suit. R. S. art. 1194, § 16, and article 2978. This fact must be alleged and proved. Haymond v. Haymond, 74 Tex. 414, 12 S. W. 90. The contention of appellant is that at the time the petition for divorce was filed in Grayson county Rena McLean had not been a resident of said county for six months next preceding the bringing of the suit, nor was she a resident when the amended petition was filed, and that these facts are established by the undisputed testimony adduced in the case. The appellee contends that the evidence on this issue is not undisputed, but was of such a nature that it called for the issue to be submitted to the jury. We are inclined to the view that the evidence was not so absolutely one way as that it became a question of law for the court to determine, but that there was such a conflict in the evidence that it became a question for the jury, and the court did not err in submitting it to the jury. Michael v. Michael, 34 Tex. Civ. App. 630, 79 S. W. 74; Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L. R. A. (N. S.) 1100. The testimony of E. C. McLean to the effect that his residence was permanently fixed in Beaumont during the three years he was there cannot be said to be undisputed in view of the testimony of other witnesses and circumstances as shown by the record; but,

should it be conceded that his evidence was conclusive on that point, yet that would not settle the issue of jurisdiction as to the divorce proceedings. It is not questioned that E. C. McLean and Rena McLean returned to Sherman about August 5, 1905, to live. The amended petition for divorce was filed more than six months after their return to Sherman, and, unless Rena McLean's absence from Grayson county from the time of the filing of the original divorce petition until the filing of the amended petition fixed her residence in Beaumont, then her residence was in Sherman, and the court in Grayson county was the proper tribunal to adjudicate the matter of divorce. When Mrs. McLean left her husband, she was free to choose her residence. What her intention was as to residence was a question for the jury, and their decision of the matter we think settles it. In Haymond v. Haymond, 74 Tex. 414, 12 S. W. 90, Justice Henry said: "We do not think that a temporary absence from the state or county of an inhabitant of the state during the six months next preceding the filing of his petition for divorce would affect his right to maintain it." So we do not think the absence of Mrs. McLean from Sherman, while at Beaumont, with her married daughter, after leaving her husband, changed her residence from Grayson county, and defeated the jurisdiction to try the divorce suit.

The fifth and sixth assignments of error complain of the court's refusal to give special charges Nos. 4 and 11. We are of the opinion that the court committed no error in this respect. The court gave a full and correct charge applicable to the facts adduced, and practically embraced the principles announced by the special charges where applicable. The court's charge on the question of the intention of the parties as to residence we think stated the law, and, where the special charges stated a different proposition, they were incorrect, and should not have been given. Said charges on the question of intent stated an opposite principle from that of the court, wherein the jury were told: "If you believe from the evidence that when the said E. C. McLean moved from Grayson county to Beaumont, Jefferson county, Tex., he did so with the expectation of returning to his home in Grayson county, unless after a trial he thought conditions were suitable to his remaining in said Beaumont, and if you further believe from the evidence that he continued in this frame of mind in reference to his residence until August, 1905, when he decided that conditions were not favorable to him in said city of Beaumont and returned to resume his residence in Grayson county, and that he removed back to Grayson county for the purpose of making it his future home, then you are instructed that his residence in Grayson county did not change during his stay in said city of Beau-

mont, and Rena McLean then had the right to maintain the said suit in Grayson county when the original petition was filed." There being a conflict between the special charges and the foregoing charge of the court, and the court's charge being correct, there was no error in refusing the special charges.

Complaint is made of the refusal of special charges Nos. 6 and 14. Said charges embodied the idea that if Rena McLean left Grayson county in November, 1905, with no fixed intention of returning to said county and permanently residing there, then she could not maintain the divorce suit. This idea was covered by the charge of the court. The special charges also embodied the idea that if she intended when she left Grayson county to return to and permanently reside in said county, but afterwards, before the six months expired, she formed the intention of never permanently residing in Grayson county, to find for defendant. There was no evidence as to what her intentions were about making Beaumont her permanent home before the expiration of the six months necessary for her to maintain her suit in Grayson county. When she left Grayson county, she stated, in effect, that she was leaving for fear her husband would do her violence. She testified on the trial of the divorce suit that she resided in Sherman, and had so resided for over 25 years. E. C. McLean testified that he heard Rena McLean testify on the hearing of the application for alimony, which was after the first trial of the divorce suit, that she stated she never expected to live in Sherman and would not live in Sherman; that she could not face the people of Sherman after the disgrace of the trial. J. H. Wood testified that he heard Rena McLean's testimony on the application for alimony. He said: "I don't remember that she used the language, 'That she never expected to live in Sherman again.' She told me she felt like she could never face the people of Sherman again, but I don't know when she told me that." Mrs. McLean was defeated on the first trial of the divorce suit. The trial and incidents connected therewith were calculated to humiliate her, and it was but natural for her to give utterance to such expressions of feeling as stated by McLean, but such expressions should not be considered as tending to show what her intentions as to residence were before the first trial. We conclude that there was no evidence before the jury as to having a fixed intention of abandoning permanently her residence in Grayson county prior to the filing of her amended petition in the divorce suit, which was after the expiration of the six months necessary for her to maintain the divorce suit.

The thirteenth assignment of error is: "The court erred in giving to the jury so much of the tenth clause of its charge to the jury as submitted to the jury as a question of fact to be determined by them whether

or not the plaintiffs C. B. Randell and J. H. Wood acted in good faith in bringing the suit for divorce because the undisputed evidence showed that they had full notice of the fact that Rena McLean had not resided in Grayson county, Tex., long enough for the court to have jurisdiction of the divorce suit." The contention of appellant is, in effect, that, to charge the husband with attorney's fees for bringing a divorce suit, the attorneys must have acted in good faith and on reasonable grounds that were probably true, and that the bringing of the suit in a court without jurisdiction, of which they had notice, was not an act of good faith. We have hereinbefore stated that the substance of the evidence which we think shows that the court had jurisdiction of the divorce suit. At least, it was such that the court was authorized to submit the issue to the jury for its determination, which the court did. The jury found in favor of the court's jurisdiction, and we think the jury's verdict supported by the evidence. On the proposition of there being reasonable grounds for the belief that there was sufficient cause for divorce, we think is abundantly supported by the evidence. The court by appropriate instructions submitted the issue of good faith on the part of plaintiffs in bringing the divorce suit, and they have found that said plaintiffs acted in good faith. It is clear that in a divorce suit by the wife where probable cause existed that she was entitled thereto the husband is liable for attorney's fees contracted by the wife; said fees being necessary for the protection of the wife's rights under the law. McClelland v. McClelland, 37 S. W. 350; Hicks v. Stewart, 118 S. W. 206.

The sixteenth assignment complains of the giving a certain charge and the refusal of a requested charge on the same point. The charge given is: "You are instructed that the plea of the defendants as to the satisfaction to plaintiffs for their services in said divorce suit by the payment of defendant, Rena McLean, the stenographer's bill for the performance of certain work in the divorce suit, is not proven by the evidence, and you will find against the defendants on this plea." The requested charge refused is: "If you believe from the evidence that the plaintiffs herein or either of them without the consent or knowledge beforehand of Rena McLean incurred the expense of obtaining a stenographic report of the evidence adduced on the first trial of the divorce suit for the use by them in preparing a motion for a new trial, and that thereafter the said Rena McLean expressed to J. H. Wood an unwillingness to further prosecute said suit for divorce, and that the said J. H. Wood in behalf of the plaintiffs herein informed her that, if she would reimburse plaintiffs the amount of said expense, they would be willing for said divorce suit to be dismissed without the payment to them of any attorney's fees, and if

you further believe from the evidence that the said Rena McLean was assured by the said J. H. Wood that, if she would go on with the prosecution of said divorce suit, plaintiffs would procure for her a decree of divorce and a division of the property, and that the said Wood told her that he would guarantee such result, if she would continue the prosecution of said suit, and if you believe from the evidence that the said Rena McLean relied upon the assurances and guaranty of the said Wood and was induced thereby to continue the prosecution of said divorce suit, and if you further believe from the evidence that before said offer made to her by the said J. H. Wood that, if she would reimburse to plaintiffs the said expenses they had incurred, they would be willing for the divorce suit to be dismissed without the payment to them of any attorney's fees, had been withdrawn, the said Rena McLean paid to the plaintiffs herein the said expenses that they had incurred in procuring said stenographic report, and that she, after another trial, refused to further prosecute said suit and the same was dismissed, you will find for the defendants." The evidence shows that plaintiffs after the first trial of the divorce suit expended about $250 in procuring a copy of the stenographer's report of the proceedings of said trial for their use in preparing a motion for a new trial. The bill was presented to Mrs. McLean by letter, and she replied as follows: "Mr. Wood: I had your letter with bill for record. You and Mr. Hassell, with a full knowledge of my situation, and without conferring with me, got out the record. As I understand it, an unusual expense for a motion for a new trial. I regret the situation very much indeed—it is extremely embarrassing to me—and I am helpless to meet it. Yours very truly, R. M. McLean. Sherman, April 20, 1906." The matter of this expense remained open until September 3, 1906, when plaintiffs wrote Mrs. McLean in part as follows: "As you know, we are financially involved in this matter in the sum of $250.00 regardless of any fee. There is also a motion pending requiring us to give bond for costs. Of course, that could be met by an affidavit in lieu of cost bond. If we could be reimbursed for the money due on this case, we would be willing for the matter to be dismissed without the payment of any attorney's fees." Mrs. McLean by deposition testified that: "It is a fact that the only money I ever paid in the course of the litigation between myself and E. C. McLean for divorce, was in the neighborhood of $250.00 fee of the stenographer who transcribed the evidence. It is a fact that I have never paid the firm of Randell & Wood, or either member of said firm, any attorney's fee whatever." There is no evidence that the proposition of plaintiffs to dismiss the suit without the payment of attorney's fees was ever accepted by Mrs. McLean. After the proposition was made, the suit was twice tried,

once in March, 1907, and again in May, 1907. Nothing was ever paid in settlement of the attorney's fees. We think there was no error in the action of the court in giving the charge and refusing the special charge complained of.

We have considered the other assignments relating to the exclusion of certain testimony of Mrs. McLean, to the admission of her ex parte depositions taken at the instance of plaintiffs, to the admission of portions of the record in the divorce suit, admitted on the issue of good faith in bringing said divorce suit, and limited to that purpose, to the remarks of plaintiffs' counsel, and to all other assignments not herein specially discussed, and find no reversible error therein.

The judgment is affirmed.