## BLACK v. BLACK.
### No. 2626.

Court of Civil Appeals of Texas. Waco.

Jan. 18, 1945.

Rehearing Denied Feb. 8, 1945.

Tom R. Mears, of Gatesville, for appellant.

Claude Segrest, of Waco, and E. M. Dodson, of Marlin, for appellee.

TIREY, Justice.

This is a divorce suit. Plaintiff's cause of action was grounded upon cruel treatment and the trial court submitted such issue to the jury, which was answered in plaintiff's favor. The court granted plaintiff's motion for judgment and awarded the care and custody of the minor daughter to plaintiff and appointed a receiver to sell the community property. Defendant has appealed.

The judgment entered is assailed substantially on two grounds: (1) That the evidence shows as a matter of law that plaintiff had not resided in Falls County six months next preceding the filing of her suit for divorce; and (2) that the evidence is wholly insufficient to support the verdict of the jury and decree for divorce entered thereon because plaintiff's testimony was not corroborated.

The points raised require a complete statement. Plaintiff and defendant were married in June, 1930. About 1942 they purchased a farm in Falls County. At the time they purchased this farm plaintiff and defendant were living in Marlin, Falls County, Texas, and they immediately moved upon the farm they purchased and continuously occupied it as a home until January 24, 1944, save and except there was a temporary separation in 1941, at

which time plaintiff filed suit for divorce, but that suit was never tried and there was a reconciliation. The plaintiff testified substantially to the effect that on Christmas morning (1943) the defendant "went into one of his tantrums and kicked me in the back and for five days and nights I could not sit down without screaming with almost unbearable pain"; and further "* * * on January 24th (1944) Mr. Black struck me in the mouth making it bleed and it scared my little girl almost to death, and I decided that I could no longer live under such treatment, although he had often threatened me not to leave I finally decided that it was impossible for me to live with him any longer." Plaintiff filed her petition for divorce on February 14, 1944. She further testified that after she filed the divorce she went to her sister's home in Turnersville, Coryell County, and while she was staying at her sister's home the defendant came to see her. "He claimed to come to settle up the property, he said that he wanted to settle it out of court for me and the baby's sake, but he got mad about me hiring a lawyer and caught me by the arm and wrenched it." She further testified substantially to the effect that when she left her home on January 24, 1944, she came to Waco, McLennan County, Texas, and stayed in Waco about two weeks; that she had some money in the bank at Lott but on the 14th of February she checked the money out of the Lott bank and placed it in a bank at Waco; that when she left McLennan county she went to her sister's in Turnersville, Coryell County, Texas, and that she had been living in Coryell and McLennan counties since the day she left Falls county.

"Q. You have not been living in Falls county since the day that you abandoned your home have you? A. No.

"Q. You have been living in Waco and Coryell county, is that true? A. Yes.

"Q. Now then Mrs. Black this petition for your divorce was filed on the 11th day of February, 1944, where were you living at that time, in Waco, McLennan county, or in Coryell county? A. I had just gone to Waco, I had just left my home in Falls county. * * *

"Q. And on the 14th day of February you filed this petition for a divorce, now then Mrs. Black don't you love your husband? A. No.

"Q. You don't love the man that is the father of your baby? A. No.

"Q. Have you ever loved him? A. Ever since I have been married to him it has been a question about it, I loved him when I first married him yes.

"Q. When did you cease to love him? A. Well naturally his cruel treatment would make me against him.

"Q. Now then as a matter of fact your husband has been good to you? A. No.

"Q. Doesn't he love you? A. No, I know that. * * *

"Q. Now then Mrs. Black you say that you have never mistreated him? A. That is right.

"Q. You have been good to him? A. That is right.

"Q. But he has been mean to you? A. That is right, he has been mean to me. * * *

"Q. How did you go to Waco when you left? A. On the bus.

"Q. At the time that you left it was your intention to leave wasn't it? A. I was afraid to leave him; he had threatened my life.

"Q. Is that why you left and abandoned this county, went to Waco and left your house on this little farm over there, do you think that you couldn't get along, or would you be willing to try it over and try to get along? A. No.

"Q. When did you make up your mind to that effect? A. Since I was first married I have been making my mind up all along.

"Q. And you have been making up your mind to quit him all along? A. Not necessarily, as I have said his cruel treatment toward me has caused me to quit him. * * *

"Q. And you have your mind definitely made up that you can't live with him? A. I can't. * * *

"Q. Now then you have not been back to Falls county until this morning? A. No.

"Q. And it is the first time that you have been back to this county since you left and abandoned your home? A. Yes.

"Q. Now have you lived in Waco any since you left there and went to Coryell county? A. No. * * *

"Q. Did you have any other place to go and stay when you left your house? A. No, I didn't. * * *

"Q. Did you or not consider Waco or Coryell county your home? A. No.

The defendant testified in his own behalf to the effect that he loved the child born to him and his wife; that he did not kick plaintiff in her back: that he did not injure her arm; that he never inflicted any pain on her and that he wanted to live with her as his wife and that he was contesting the divorce case because he did not want her to have a divorce and because he wanted to live with her as his wife; that it was his opinion that it was possible for him and his wife to live together and that he had never been guilty of hurting his wife and that it had never been his intention to injure her, and that he did not hurt her.

The judgment entered by the trial court, among other things, recites: "* * * whereupon the plaintiff having made, and the court having duly heard and considered a motion for judgment, and such additional considerations and findings as were authorized by law having been made and had and all prerequisites of law have been complied with and plaintiff is entitled to the following judgment: It is therefore ordered, adjudged and decreed by the court that the bonds of matrimony heretofore existing between plaintiff, Bessie L. Black, and defendant, O. R. Black, are hereby dissolved and the plaintiff is granted a divorce from defendant."

■ The first question that presents itself to us under this record is: Does the record show that the plaintiff has resided in Falls county six months next preceding the filing of her suit for divorce? We think it does.

■ The evidence is without dispute that the plaintiff and defendant had resided on the farm in Falls county since they purchased it. It is true that she separated from the defendant on January 24, 1944, and came to Waco in McLennan county and from Waco she went to Coryell county, but plaintiff testified positively to the effect that she was afraid to live with the defendant, and that neither Waco nor Coryell county was her home. Our Supreme Court in Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90, point page 92, held: "We do not think that a temporary absence from the state or county of an in-

habitant of the state during the six months next preceding the filing of his petition for divorce would affect his right to maintain it." The exact question was again passed upon in Fox v. Fox, Tex.Civ.App., 179 S.W. 883, point page 885, and again in McLean v. Randell, Tex.Civ.App., 135 S.W. 1116 (writ ref.). See also Therwhanger v. Therwhanger, Tex.Civ.App., 175 S.W.2d 704, point 9 on page 707: Accordingly, point 1 is overruled. Nor do we find that the amended petition filed by plaintiff set up a new and independent cause of action. See Day v. Day, Tex. Civ.App., 142 S.W.2d 394.

■ Is the evidence sufficient to sustain the finding of the jury and the decree of the court entered thereon that defendant was guilty of cruel treatment toward his wife that rendered their further living together insupportable? We think it is. This point was passed upon in Barrow v. Barrow, Tex.Civ.App., 97 S.W. 120, 121. In that case the court said: "The only other assignment of error complains of the insufficiency of the evidence to support the verdict. On all the material allegations against the defendant the evidence is conflicting. It was for the jury to pass upon the credibility of the witness and determine the weight to be given their testimony. If the plaintiff's testimony was true (and this was for the jury, not for us, to say) it shows that her husband was guilty of excesses, cruel treatment, and outrages towards her of such a nature as rendered their living together insupportable. It would have been much more satisfactory to us if proof of these matters had been made by some other witness than the plaintiff herself. But the Legislature, in its wisdom, has made the parties to these sad cases competent witnesses, enabling one or the other, if believed by a jury, to have unloosed the most sacred tie that comes from heaven to earth, from which all domestic relations spring, and upon which the very foundations of organized society rest. And it is not for appellate courts to gainsay the statute, but to give it force by refusing to set aside a verdict resting alone upon the testimony of such a witness." The same doctrine has been uniformly followed by our courts. See also Tinnon v. Tinnon, Tex.Civ.App., 278 S.W. 288; McCullough v. McCullough, Tex.Civ.App., 20 S.W.2d 224, certified question answered by S·Ct. in 120 Tex. 209, 36 S.W.2d 459; McBee v. McBee,

Tex.Civ.App., 247 S.W. 588; Wynn v. Wynn, Tex.Civ.App., 251 S.W. 349; Bell v. Bell, Tex.Civ.App., 135 S.W.2d 546, point 5-6; Lowery v· Lowery, Tex.Civ.App., 136 S.W.2d 269, point 3-4, page 270.

We have carefully considered each of the other points raised by appellant and each is overruled.

The judgment of the trial court is affirmed.