FOX v. FOX.  (No. 5616.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 27, 1915.)

1. DIVORCE ⬦124—JURISDICTIONAL FACTS— RESIDENCE IN COUNTY—SUFFICIENCY OF EVIDENCE.

Evidence in a wife's action for divorce and for the recovery of her separate property *held* to sustain a finding that at the time of the filing of her petition plaintiff had been an actual bona fide inhabitant of the state for twelve months, and had resided in the county where the suit was brought for six months next preceding the filing of the petition, within the jurisdictional requirement of Vernon's Sayles' Ann. Civ. St. 1914, art. 4632.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 392–398, 450, 455, 456; Dec. Dig. ⬦ 124.]

2. DIVORCE ⬦62—JURISDICTION—RESIDENCE —CONSTRUCTION—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4632, requiring that a petition for divorce, and proof in support thereof, show that at the time of its filing the plaintiff had been an actual bona fide resident of the state for twelve months, and a resident of the county where suit was brought for six months next preceding the filing of the petition, a long-continued absence from the state or county would not be a substantial compliance with the requirement that the party be a bona fide inhabitant of the state, but a temporary absence from the state or county during the six months preceding the filing of a petition for divorce would not affect the right to maintain it.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 200–202, 208–216, 220, 282; Dec. Dig. ⬦62.]

3. VENUE ⬦8—STATUTE.

Where a wife furnished money to her husband to be loaned upon real estate securities in her name and for her benefit, but the husband converted it to his own use in B. county, or placed it upon securities and retained the evidence thereof in his own name and refused to deliver them, the wife's action charging such fraud, that some of the property was situated in B. county, and seeking the establishment of a resulting trust, was properly brought in B. county, within the express provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, § 7.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 17; Dec. Dig. ⬦8.]

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action by Ida West Fox against E. A. Fox for divorce and the recovery of separate property. From an order of injunction, defendant appeals. Affirmed.

Arnold, Cozby & Peyton, M. W. Davis, and Davies & Davies, all of San Antonio, for appellant. Carlos Bee, C. C. Todd, and Ball & Seeligson, all of San Antonio, for appellee.

CARL, J. Appellee, Ida West Fox, on May 11, 1915, filed suit against appellant, E. A. Fox, for divorce, and for the recovery of her separate property, and obtained an injunction against appellant. On August 31, 1915, the court overruled a motion to dissolve this injunction, and continued same in force until the further orders of the court. This is the order from which this appeal is prosecuted.

The petition alleges that the plaintiff was, and had been at the time of the filing of the petition, a bona fide resident of the state of Texas and county of Bexar for one year before such filing of the petition. In addition to the allegations in support of the divorce prayed for, the petition charges that appellant married her in order to secure all her *available money*, and had appropriated the same to his own use; that prior to the marriage the appellant persuaded appellee to loan him $2,500, and executed a deed of trust on certain real estate in San Antonio, which he never owned, but which stood in the name of his daughter, Blanche Fox, and since the marriage he has taken from appellee the notes and deed of trust covering this loan so that she would not have any evidence of said debt; and, further, that since the marriage appellant had secured from her $10,-000, agreeing to lend same for her and give her the securities for same, which he has failed and refused to do, and refuses to account to her for the same. The petition also alleges that a certain $2,000 vendor's lien note was purchased out of her said money, and that certain other property and purchases were made with her money, and charges that funds in the State Bank & Trust Company are a part of her said sum of money.

A divorce was prayed for; also a judgment for $12,500 so fraudulently obtained, and that same be declared a lien upon property alleged to belong to appellant; and for an injunction restraining the bank from paying out any of said money upon appellant's checks, and to restrain the defendant from disposing of the real estate pending the suit.

The motion to dissolve the injunction was based mainly upon the following grounds:

(1) That the plaintiff was not a bona fide resident citizen and inhabitant of the county of Bexar, state of Texas, and was not at the time of filing the suit; that when defendant and plaintiff married on February 13, 1915, appellee gave her residence as the city of St. Louis, in the state of Missouri, and was not at that time, and never had been, a resident citizen of the state of Texas. It is alleged therein that after the marriage they came to Texas and moved out on a ranch in Medina county, where they resided at the time this suit was filed, and that by reason thereof the Thirty-Seventh district court of Bexar county had no jurisdiction to try the cause, which, it is alleged, is a suit for divorce, and that neither plaintiff nor defend-

ant was an actual bona fide resident citizen of Bexar county.

(2) That the injunction issued and served upon the State Bank & Trust Company impounded and tied up funds belonging to E. A. Fox, defendant, and prevented him from selling any property.

The plaintiff below denied these allegations, and replied that it was necessary for her health, pleasure, and business that she be away from Bexar county a great deal, but that she had, while gone, kept her room here, in which her personal effects were left. She admitted that they went upon the ranch in Medina, Bexar, or Bandera county, but says she thinks it was situated partly in all of said counties, but says that this sojourn was never intended by either of them to be aught but temporary. She alleges that appellant did not own the ranch, but had merely a contract or option to buy same, and that a large part of her separate funds, acquired as formerly stated from her by defendant, was invested in same and improvements thereon, and asserted that she was entitled to an equitable lien on same. She alleges, further, that she believes that appellant has conspired with Becher, the man from whom he obtained the contract for said land, to surrender his contract or convey same to Becher, or some other person, to defraud her of the equity therein.

This supplemental petition and reply further alleges that the fraudulent acts of the defendant were committed in whole or in part in Bexar county, and that some of the stock purchased with the money fraudulently acquired from 'her were in Bexar county, and that since the injunction was issued defendant had disposed of a part of the stock, and converted the proceeds to his own use. Harry Becher was made a party. The injunction issued was later modified so that it would not prevent E. A. Fox from collecting from the State Bank & Trust Company the money on deposit in the name of E. A. Fox or the Fox Realty Company, and he was permitted to check all he desired either as E. A. Fox or Fox Realty Company.

Any further statement necessary will appear in course of the discussion which follows.

The main contention is that the evidence does not show that the plaintiff had been an actual bona fide inhabitant of the state of Texas for one year and had resided in Bexar county for six months next preceding the filing of the petition. This case, as it comes to us on the question of jurisdiction, must be controlled by the facts in evidence as to the residence of Mrs. Fox, the plaintiff below.

Under the law, as it now stands (article 4632, Vernon's Sayles' Statutes), the petition and proof in support thereof must show that at the time of the filing of such petition the plaintiff had been an actual bona fide inhabitant of the state for a period of twelve months, and had resided in the county where the suit is brought for six months next preceding the filing of the same.

Defendant testified that he met the plaintiff about December 24, 1914, and they were married on the 13th of February, 1915, at St. Louis, Mo. There is an affidavit in evidence, made by both the parties to this suit for the purpose of obtaining a marriage license in St. Louis, in which the residence of appellee is given as 5331A, Ridge avenue, St. Louis, Mo. When they married they came to San Antonio, and he says they first lived at 121 Uvalde street, where they arrived on February 15th, which they were to vacate on March 1st. He says they vacated the house on Uvalde street, and stayed at the Travelers' Hotel. The house on Uvalde street was his home up to that time, according to his statement, and he brought his wife there to that house, which he says, however, was in his daughter's name. He says, further, that on the 2d of March they went to the Travelers' Hotel, but that on the 11th or 12th of March she made a trip to St. Louis, and came back on March 28th, and went out to the ranch with him. This ranch, according to his testimony, is in Medina county.

There is a great deal of testimony on both sides as to the matter of residence; but, since the court heard evidence on that issue and determined it in favor of the appellee, we will direct our investigation towards ascertaining whether there is sufficient evidence to sustain that finding.

Mrs. Fox says that prior to her marriage with Mr. Fox, in February of the present year, she lived in San Antonio most of the time for the past six years, and that she had an understanding with Mr. Fox prior to their marriage that they were to be here in San Antonio; that they were to go to the ranch for a short time to get things in order, and then come back to San Antonio, where he would carry on the real estate business. She says that she had a room here in the city all the time before she was married, and kept said room, with her furniture in it, during the time she was away from San Antonio, in St. Louis, Chicago, and other places, where her health, pleasure, or business called her. She says she went to St. Louis for an operation on her throat, but she says that, notwithstanding her trips and the periods of time she stayed away from San Antonio, it has always been her home for the past six years, and that her understanding and agreement with Mr. Fox was that their home would continue to be in San Antonio, as it had been in the past, except for that temporary absence for improving and preparing the ranch for the market. She says that Mr. Fox said it would be a useless expense to take the piano out to the ranch, and they left it at Goggan's music store. Further testifying, she said that he told her they would just go out there long enough to get some fences fixed up and the barn fixed, and get things in running order. This is further substantiated by the

fact that Mr. Fox wrote to her on February 13th, before their marriage, that he did not think either of them would want to live on the ranch, and that he would keep a house in town. On February 6th he wrote that his son would give up the cottage on Ulvalde street when wanted.

There is other evidence that Mr. Fox had stated to divers people that he did not intend to live on the ranch, and the further fact that he took a guaranty of title, of date March 20th, in which he gave his residence as Bexar county, Tex., together with the further fact that on April 26, 1915, he brought his wife and her trunk to San Antonio and paid her room rent and occupied the room with her.

So we have the positive statement of Mrs. Fox that San Antonio had been her home for six years next preceding the filing of the petition; that she had never abandoned it, and had been away only on trips for her health, pleasure, or business. She explained the affidavit made in St. Louis by saying that she told the clerk before whom it was made that she was in St. Louis a part of the time, where she was staying with a sister. A great part of the year preceding the filing of the petition for divorce she was out of the state, in St. Louis, Chicago, and other places; but she says that these trips were made on the advice of physicians, for her health, and in looking after her business interests in Illinois, as well as partly for pleasure. It is even made to appear that she was out of Bexar county more than she was in the county during that year, if we consider the time they lived at the ranch, which is said to be in Medina county.

[1] The question of whether parties have or have not resided in the county six months or been bona fide inhabitants of the state for twelve months before the petition is filed, while jurisdictional in its nature and necessary to be established before a divorce will be granted, is nevertheless a question of fact to be determined like any other issue in the case, and, the trial court having heard the evidence and determined that issue in favor of appellee, and in favor of the jurisdiction of the court, we would not be authorized to disturb that finding, where there is as much evidence as there is in this record that Mrs. Fox had lived here six years and had never abandoned her residence.

Supposing that appellant's ranch is in Medina county, that fact, which is relied upon to break the continuity of residence in Bexar county, is itself a disputed issue; that is, as to whether their residence there was merely temporary, or whether it was intended to be permanent. She testified that it was only a sojourn, temporary in its nature, and that neither of them ever intended to make that their home, but that both of them recognized that their home was in San Antonio. There is other evidence besides that of appellee along this line, including that of Manton, the Ezells, and others.

[2] There is no doubt that a long-continued absence from the state or county, such as is shown in the Michael Case, 34 Tex. Civ. App. 630, 79 S. W. 76, where the plaintiff had been residing in Illinois for more than sixteen years prior to the filing of the suit, would not harmonize or be a substantial compliance with the requirement that the party must be an actual bona fide inhabitant of the state for the legal time prior to exhibiting the petition; or, as in the Haymmond Case, 74 Tex. 414, 12 S. W. 90, where the plaintiff left his family in Bell county in 1881 and went to Central America, where he stayed for many years, and then returned to Bell county and filed his suit, alleging that he had never abandoned that as his home. Of course, there is a distinction between a legal residence for the purpose of voting, etc., and a residence contemplated by the divorce statute. In the Haymmond Case, however, Judge Henry, speaking for the court, expressly stated:

"We do not think that a temporary absence from the state or county of an inhabitant of the state during the six months next preceding the filing of his petition for divorce would affect his right to maintain it."

And so it was held by Chief Justice Rainey, speaking for the Dallas court in the case of McLean v. Randell et al. (Civ. App.) 135 S. W. 1119, in dealing with a case where Mrs. McLean left Sherman and went to Beaumont, where she resided with a married daughter for several months, that the district court of Grayson county had jurisdiction of her cause of action for divorce.

The construction of any law ought to be a reasonable and common-sense construction, and, if we were to construe article 4632 of the Revised Statutes as requiring that a party should spend the entire year in the state or the entire six months in the county before bringing a suit of that nature, we think it would be an unreasonable construction. Many people in good faith claim San Antonio, for instance, as their home; but their business calls them away to such an extent that they may spend more time away from this county than they do in it. This is notably true of some traveling salesmen, and yet they have no home anywhere else. Would it be just for such a person to be denied the jurisdiction of the courts of the county where his home is? Or, if a person falls into bad health, and it becomes necessary to leave his home for the purpose of obtaining a cure, should he thereby lose the protection the laws of his home give him? We do not believe that absence in cases of this kind destroys the bona fides of residence, nor do we think that the fact that Mrs. Fox's health and business affairs called her away from San Antonio a great deal would preclude her from maintaining her suit in Bexar county, when she testifies positively that this had

been her home for six years, and that her absence was made necessary in the manner detailed. The Thirty-Seventh district court of Bexar county did have jurisdiction to entertain the bill for divorce.

[3] There is another reason, independent of the divorce phase of the case, which would give appellee the right to maintain this action in Bexar county, which is the allegation, supported by testimony, that money was furnished to the defendant for the purpose of being loaned upon real estate securities in the name and for the benefit of the plaintiff below, but that the defendant, instead of so loaning the money, converted it to his own use in this county, or placed it upon securities and retained the evidence thereof in his own name, refusing to deliver the same to Mrs. Fox. In other words, she charges that he practiced fraud upon her in Bexar county, Tex.. and that some of the property is there situated. Her petition specifically sets these matters out, and asks that a, resulting trust be established and fixed upon said properties. This would bring it squarely within the provisions of section 7 of the exceptions to article 1830 of Vernon's Sayles' Statutes. It is well established in Texas that a wife may maintain a suit against her husband for the protection of her separate property, and the petition in this case does not seek to deal with community property. Dority v. Dority, 96 Tex. 222, 71 S. W. 950, 60 L. R. A. 941. And if she has instituted such a suit for the protection of her separate property, and the alleged fraudulent acts of the defendant were committed in Bexar county, there is no reason why this suit should not there be maintained. O'Brien v. Hilburn, 9 Tex. 297; Ryan v. Ryan, 61 Tex. 473; Hall v. Hall, 52 Tex. 298, 36 Am. Rep. 725; Price v. Cole, 35 Tex. 471. In the case of Dority v. Dority, supra, we find a very learned discussion by Judge Williams.

The judgment of the trial court is in all things affirmed.