## PAVELL v. PAVELL.
### No. 4088.

Court of Civil Appeals of Texas. Beaumont.
July 27, 1942.

Rehearing Denied Feb. 11, 1943.

Affirmed.

D. C. Bland, of Orange, for appellant.

K. W. Stephenson, of Orange, for appellee.

WALKER, Chief Justice.

This is a divorce suit by appellee, Agnes Pavell, against appellant her husband, F. J. Pavell, with prayer for divorce, partition of community property, costs, etc. On trial to the court without a jury, judgment was for appellee for divorce, with order of partition, for costs, and for $1,000 for attorney's fees, from which appellant has duly prosecuted his appeal.

■ His first point is that the suit was heard and divorce granted before the expiration of thirty days after the suit was filed, in violation of Article 4632, R.C.S. 1925, which provides: "Suit shall not be heard or divorce granted before the expiration of thirty days after the same is filed." The point is overruled. The suit was filed on the 15th of January, 1942. On the 25th day of February, 1942, in open court, appellee amended her petition under order of the court, appellant's counsel being present and consenting thereto, "by adding the word 'next' in between 'six months' and 'preceding the filing of the suit.'". Appellant's point is that the amendment of the petition gave the district court of Orange County for the first time jurisdiction of appellee's cause of action. The case was called for trial on the 26th day of February, and on the 28th day of February, in the manner provided by law, the court extended the term for the purpose of completing the trial. The judgment recites: "And thereafter, and before the expiration of said extended term, and on the 30th day of May, 1942, the trial of said cause having been completed and the Court having heard the evidence and arguments of Counsel, the

Court thereupon made known that he was of the opinion that the plaintiff was entitled to judgment, that the bonds of matrimony heretofore existing between the plaintiff, Agnes Pavell, and the defendant, F. J. Pavell, be and they are hereby dissolved, and the plaintiff is granted a divorce from the defendant."

Appellant contends on evidence dehors the transcript that the court granted the divorce on the 28th day of February at a time when the court was without jurisdiction of the cause of action. If that contention be conceded, then the order granting the divorce on the 28th day of February was absolutely null and void as being in violation of Article 4632. But the court extended the term and on the face of the judgment granted the divorce on the 30th day of May, which was long after the expiration of thirty days from the filing of the suit, and at a time when, under appellant's point, the court had jurisdiction to enter the judgment.

■ Article 4632 provides that the suit shall not be "heard" or divorce granted before the expiration of thirty days after the same is filed. On the facts, it is clear that the divorce was not granted until more than thirty days after the suit was filed, but appellant says, under his point of jurisdiction, that the suit was "heard" the next day after the amendment was filed, and that the court was without jurisdiction to hear it. This contention is overruled. The fact that the court may hear the petition read and may receive evidence before the expiration of thirty days from the filing of the suit, would not make his judgment of divorce void nor voidable when, after having heard the petition and received the evidence, there is the statutory delay before the divorce is granted. By withholding his judgment and holding the case open for additional testimony until the expiration of the full statutory thirty days, the court has jurisdiction to enter the divorce decree.

■ Appellant also makes the point that appellee did not plead a cause of action for divorce. This contention is overruled. The petition plead facts showing the jurisdiction of the District Court of Orange County. Appellee also alleged the statutory grounds for divorce under subdivision 1 of Article 4629, R.C.S.1925, that appellant was guilty of excesses, cruel treatment, or outrages towards her of such a

nature as to render their living together insupportable; she also alleged the supporting facts. Under the holding of our Supreme Court in McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459, followed by this court in Renfro v. Renfro, Tex.Civ.App., 80 S.W.2d 348, the petition stated a cause of action.

■ The third point is that the evidence does not support the judgment of divorce. This contention is overruled. Appellee and appellant owned a community estate, on oral argument estimated by the parties to amount to about $250,000. Under the evidence appellant, managing the estate, deprived appellee of all conveniences in their home. He refused to permit her to have anything to do with the estate and withheld from her all information about the estate. After much persuasion he bought her a cheap refrigerator. She took money inherited from an uncle and installed bathroom fixtures which he in part dismantled and gave to another woman. She was given a cheap radio and he disconnected it and gave the cord to another woman. While refusing to give her funds of the estate, he gave another woman $4,000; he bought this woman a fine refrigerator; he permitted her to occupy community property without paying rent. When appellee protested he told her whatever this woman did was not any of her business. He told appellee that he didn't care anything about her; that he was tired of her; that he wanted her to get a divorce; she testified "He invited me in October why didn't I get a divorce"; he said: 'Why don't you get a divorce,' and I just didn't answer that." Appellee testified: "Well, I had no radio and the children asked him if he would go in with them and get me a radio; they said, 'Mother is lonesome by herself a good deal.' He said he couldn't do it. Later they got me a little one and installed it. And when this woman was there, they come in the house and got everything they needed and they come in the house and took the cord off the radio and carried it to the cafe. * * * After this woman came in the house it seems she could get anything she wanted. He put four thousand dollars to her credit. * * * If I asked him where she got it, he would say that was none of my business, about what she had or what she could afford, and yet, she wasn't making anything out of the restaurant. * * *

"Q. I want you to state whether or not you believe you and your husband can live together as husband and wife? A. I don't think so.

"Q. Now, are you uncertain about that? A. After all this, I think when you feel that way about people, you don't care to live with them longer.

"Q. Is that on account of the remarks he made to you? A. Well, yes, and his general attitude. Taking everything together, I think it would be best if we would separate.

"Q. About this woman, I will ask you to state whether or not it is your opinion she has come into your husband's life? A. I think that has had a whole lot to do with it. When I asked him about her collecting the rent, he informed me the property was his; he would do as he pleased and she could stay there as long as she wanted to and she didn't have to pay rent. * * *

"Q. I will ask you to state whether or not you and your husband many times quarrelled about this particular woman? A. Well, whenever her name was brought up he didn't seem to like it; he seemed to think it was his business to take up for her; that she was smart and all that."

Appellant makes the point that the evidence does not support the court's fact conclusion that appellee lived in Orange County six months "next" preceding the filing of her suit and the granting of the divorce. The following summary of the evidence from appellee's brief supports the trial court's fact conclusion on this issue:

"Mrs. Agnes Pavell, appellee, testified as a witness in her own behalf and among other things stated: She stated that she had been living in Orange County, Texas, for twenty-five years. On cross-examination appellee stated that she and her husband came to Orange in 1915 to live.

"F. J. Pavell, under the adverse witness rule, stated, among other things, the following: That he and his wife were married at Sedallia, Missouri, on the twelfth day of September, 1899; that they had been living in Orange County, Texas, since August 15, 1915; that they were living in the city of Orange at 101 East Main Street and had been living at that address since they moved to Orange.

"Mrs. Patti Domatti, a witness for appellee, stated that she had been married for fourteen years and had been living in

Port Arthur; that she had had occasion to visit her father and mother (appellant and appellee) from time to time and frequently during the period of time she had been married and sometimes visited them once a week and twice a week and sometimes more often; that when she had been going to the home of her father and mother the last few years, there were disagreements in the house."

On re-cross-examination by appellant Mrs. Domatti stated that she came up once or twice a week and her entire family came along as a general rule but for the last two months she had been coming mostly by herself.

F. J. Pavell, appellant, while testifying in his own behalf answered questions as follows:

"Q. Well, now relative to this divorce proceeding, when did you first have any information about it? A. I didn't know anything about it until the citation was served on me.

"Q. Well, how long did Mrs. Pavell, if she had been away from your bed and room, how long had she been away at night before you got this citation? A. Well, I think two or three nights."

"Charles A. Fairchild, a witness for appellant, stated that he had known Mrs. and Mr. Pavell for about eleven years, and that he had had occasion to be in their home and around their premises 'right smart' during that eleven years; and that he had had occasion to go in the home of Mr. and Mrs. Pavell and, in so far as he knew, believed the home to have average conveniences.

"Mrs. Annie Hutton, who testified for appellee, among other things, stated that she was a sister to the appellee and knew appellee's husband well; that she had occasion to be in their home often; that she came 'down here' about once a year to visit her sister. On cross-examination this witness testified that she was in the home of appellant and appellee when the former got the citation in this case and that during a part of the time she slept with her sister, Mrs. Agnes Pavell.

"The evidence in this case reveals that the parties in this suit had a homestead in the city of Orange and had been living in such home since August 15, 1915; and appellant stated that Mrs. Pavell had never been away from his bed and room at night before he got the citation issued in this case longer than two or three nights."

In our judgment, the evidence forces the conclusion that appellee had lived continuously in the county of Orange from 1915 until the court entered his judgment of divorce. In their testimony no witness used the word "next" preceding the filing of the divorce. But appellant stated in his testimony the number of years that he and appellee had lived in their old home in the city of Orange and that he had not been away from his bed and room longer than two or three nights before the citation was issued, and that appellee was in the home with him. We recognize that the rule on this point requires that the evidence be clear, and that the residence be established beyond all reasonable doubt. We do not review the authorities cited by appellant because they do not extend the rule beyond our statement. It is a fact issue, and each case must rest upon its own facts.

Appellant's last point challenges the sufficiency of the evidence to support the award of $1,000 as a proper attorney's fee for appellee's counsel. This contention is overruled. The case was bitterly contested by appellant, and we have before us a statement of facts of two volumes. Before setting the fee, appellant announced to the court that the case would be appealed. As stated above, the party admitted on oral argument that the community estate had a reasonable value of $250,000, part of it in Texas and part in Louisiana. The fee was not excessive.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.

## On Rehearing

COMBS, Justice.

I concur in the affirmance of the judgment in this case but not in the holding that a divorce case may proceed to trial on the merits and evidence be introduced before the expiration of thirty days from the filing of the suit.

Art. 4632, Vernon's Ann.Civ.Stat. provides that "Suit shall not be heard or divorce granted before the expiration of thirty days after the same is filed.

* * * *" The inhibition is not merely against the granting of the divorce but against the hearing also; "suit shall not be heard" until the expiration of thirty days. I think this means just what it says. For the court to call the case for the introduction of evidence on the merits is to call it for hearing. The introduction of the testimony is not all that is comprehended within the term "hearing" but it is an important part of that process. By prohibiting both the hearing and the entry of the judgment the Legislature intended to prohibit any trial of a divorce case until the expiration of thirty days. The majority's construction of the statue would open the gates to evasion of such intent and purpose of the statute.

As indicated above I concur, however, in the holding that the judgment of the trial court was supported by the evidence and was validly entered. When the word "next" was interlined in the plaintiff's petition so as to make the petition correctly allege that plaintiff had resided in the State of Texas and in Orange County for the required length of time "next" preceding the filing of the suit, such amendment of the pleading did not amount to the beginning of a new suit. It merely supplied a clerical omission in the plaintiff's petition and such amendment related back to the filing of the suit— Jagoe v. Indemnity Ins. Co., 120 Tex. 204, 36 S.W.2d 980. Therefore, the suit had been on file more than thirty days when the evidence was heard on February 28, 1942.

The majority opinion in effect holds that an amendment merely correcting an omission or clerical error in a petition is the beginning of a new suit. That construction, I think, is entirely too technical. Even under the old rules of procedure it was held that an amendment merely supplying a technical omission or correcting an error in the pleading related back to the commencement of the suit, Jagoe v. Ins. Co., supra; Elmo v. James, Tex.Civ. App., 282 S.W. 835, and this applies to amendments supplying jurisdictional averments. Texas Employers' Ins. Ass'n v. Evans, 117 Tex. 113, 298 S.W. 516. The new rules are even more liberal in permitting the amendment of pleadings, see Rules 63 et seq., Texas Rules of Civil Procedure. It can serve no useful purpose to put a too strict construction on the rules relating to the amendment of pleadings. To do so would violate the spirit and purpose of the new rules by continuing the old system of technical pleading from which the new rules were intended to free us.