### IVY v. IVY.

### No. 6086.

Court of Civil Appeals of Texas. Texarkana.
Dec. 9, 1943.

Rehearing Denied Jan. 6, 1944.

James E. Faulkner, of Henderson, for appellant.

H. H. Wellborn, of Henderson, for appellee.

WILLIAMS, Justice.

Appellant, Dorothy Ivy, defendant below, under her first two points asserts that the District Court of Rusk County was without jurisdiction to enter the divorce decree because the undisputed evidence offered showed that appellee, Vack S. Ivy, Jr., plaintiff below, "had not resided in Rusk County for six months next or immediately preceding the filing of the suit for divorce," an essential requirement for jurisdiction under Article 4631, Vernon's Ann.Civ.Sts. of Texas.

The parents of plaintiff owned a home in Rusk County, in which home the parents and plaintiff lived from 1937 until May, 1942. On the latter date, the three left for Brazoria County, Texas, where the father and son went to work in certain military construction projects. The parents carried their truck, an automobile, icebox and bed linens, leaving the remainder of the household furnishings in the house. The parents and plaintiff occupied a "Government cabin", a 16x16 room, near their employment. Plaintiff lived with his parents in this cabin until his marriage on June 15, 1942. Plaintiff and his wife lived in a trailer house near his parents for two weeks following their marriage, and then lived with his parents in the "cabin" until August 25, 1942, when they separated. This trailer house belonged to a brother-in-law who also was engaged in work at the plant. His original petition for divorce was filed September 28, 1942. Plaintiff went to the Army in November, 1942, and in April, 1943, at the time of trial, he was stationed in the Hawaiian Islands. All the testimony in support of jurisdiction and of grounds for divorce was given by members of his family. Defendant gave no testimony. There is no dispute in the testimony. In overruling the plea in abatement, the court, per the terms recited in the judgment, found that "Vack S. Ivy has resided in said county of Rusk for more than six months before the filing of said suit, and is, and was at the time of filing said suit, residing in said county of Rusk, * * * and that he had not resided in any other county, but had been only temporarily absent from said Rusk County, for only a short time while in a defense project in Brazoria County, but his absence from Rusk County was only temporary while plaintiff was so employed, but that he at all times maintained his home and residence in Rusk County."

The requirement of Article 4631, supra, that the plaintiff shall have resided in the county where the suit is filed for six months next preceding the filing of same may be met notwithstanding the fact that the petitioner has been temporarily absent from the county during the six month period of residence prior to filing of petition for divorce, as evidenced in the holdings in Fox v. Fox, Tex.Civ.App., 179 S.W. 883; Bell v. Bell, Tex.Civ.App., 135 S.W.2d 546; Davis v. Davis, Tex.Civ.App., 40 S.W.2d 223; Busby v. Busby, Tex.Civ.App., 64 S.W.2d 392, and the authorities there collated; 15 T. J., Sec. 76, p. 538; 17 Am. Jur., Sec. 262, p. 286. The reason for the rule is stated in Fox v. Fox, supra. The court's finding that plaintiff's absence from his home in Rusk County was only temporary is not without support in the evidence and will not be disturbed. The nature of their living quarters with meager furnishings, located in a colony of cabins and trailers along with hundreds of other employees from over Texas, together with the emergency type of work under construction, would reflect that such residence and employment were not of a permanent nature.

Attack is made upon the sufficiency of the evidence to support the divorce decree solely grounded on the provision of Subd. 1,

Art. 4629, Vernon's Ann.Civ.St., which reads: "Where either party is guilty of excesses, cruel treatment or outrages toward the other, if such treatment is of such a nature as to render their living together insupportable." The term "insupportable" is defined as "incapable of being supported or borne, unendurable, insufferable, intolerable." 15 T.J. 457.

The testimony given by plaintiff's parents, his sister, and a half-brother, being all the witnesses who testified, reflects that plaintiff, during his marriage, was engaged in strenuous labor on alternating night and day shifts of nine hours or more per day; that his wife would sleep or run around when he was at work, and when plaintiff returned to the house she nagged and fussed at him to take her to a show, or up in town; that this occurred "very near practically every night, and this nagging would not let him rest or sleep at night; without rest from such hard work it would endanger his health." According to the father, "on Wednesday night before they separated Thursday, I had to threaten to thrash both of them to make them shut up fussing, she wanted to go to town and he would not go with her and he would not let her go by herself." There is evidence that she "would talk rough to him, not bad names, but bad fussing, just nagging at him, nagged him pretty much about sending money home to her people." There is evidence by the half-brother that he heard (date not shown) defendant call plaintiff a vile name during a fuss in which "she was speaking of money and was talking about a barber giving (or wanting to give) her a watch and plaintiff did not want her to have it." A sister testified that she saw a light go on at her parents home at 1 a.m. (date not shown) and when she got over to the cabin she saw defendant and a bus driver sitting on the bed. According to

this witness, defendant explained that she being scared to return home from the store in the camp she had asked the bus driver to walk home with her. This testimony further intimated indiscreet acts of defendant such as accepting a bus ride and transportation from a bus driver.

■ The reaction to the alleged acts and conduct of a spouse is strictly a personal matter to an alleged aggrieved spouse. Such reaction of feeling is peculiarly and exclusively within the aggrieved person's own knowledge. It is within the personal province of such aggrieved spouse to condone a marital offense. The right to prosecute a divorce suit is personal. The testimony in this record does not disclose the personal feelings or reaction of plaintiff to the alleged misconduct. It is not made known who quit who, other than that they separated. Plaintiff did not testify in the trial. He was at home on vacation, prior to trial. Seven months had elapsed when trial was had, April 20, 1943, on a first amended original petition filed March 20, 1943. This amended pleading set up the allegations under which the evidence was introduced. This amended petition was verified by the father, purporting to act as agent of plaintiff. The original petition alleged cruel treatment only in general terms. The absence of defendant and her failure to testify did not shift the burden of proof which rested upon plaintiff. In the absence of testimony of plaintiff with respect to his personal feelings and reaction to the alleged misconduct set up in the amended petition, we conclude that the evidence is insufficient (being not full or satisfactory) to support the decree of divorce entered on the grounds of cruel treatment. 15 T.J. pp. 457, 549.

The judgment will be reversed and the cause remanded.