**PICKENS v. PICKENS.**

No. 4883.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 24, 1953.

E. Bruce, Houston, for appellant.

Campbell & Foreman, Livingston, for appellee.

WALKER, Justice.

The suit is for divorce and was brought by the appellee against the appellant. The cause was tried to the court without a jury and the trial court rendered judgment that plaintiff, namely, Aubrey Frank Pickens be divorced from the defendant, Bessie Mae Pickens. From this judgment the defendant has appealed.

Opinion

Point 1 assigns as error that plaintiff's residence was in Harris County and not in Polk County, where this suit was brought and tried, and that the trial court did not have jurisdiction of the cause under Article 4631, R.S.1925, as amended, Vernon's Ann. Civ.St.

Putting aside evidence which might support this argument, there is, nevertheless, evidence of the following matters:

The plaintiff was born and reared in Polk County, and prior to the latter part of 1945 he had spent his entire lifetime in that county, residing with his parents as a member of their family. He completed his

schooling in 1945; at that time he was 18 or 19 years old. He had employment in Polk County during the following summer; but about October, 1945 he went to Houston, in Harris County, and secured employment at a foundry. He remained in this employment for about three months. During this time he resided in the household of a sister. He paid his sister no rent, but he did contribute toward the payment of the cost of the food consumed by the household. In January, 1946, he volunteered for service in the United States Army and was accepted, and he has been in the army since that time. He entered the service in Houston. It is his intention to be a professional soldier and thus, to remain in the army.

The only evidence about plaintiff's movements after he entered the army before his marriage is his statement that he received his training at Camp Lucke, Louisiana.

Plaintiff and defendant were married on March 10, 1949. The marriage occurred at the home of the defendant's mother, at Onalaska in Polk County. The defendant is about the same age as the plaintiff is, and her parents had resided in Onalaska for many years. The plaintiff, who had been acquainted with the defendant since childhood, was under the impression that the defendant's home was the home of her parents.

The plaintiff and the defendant were together until about the 1st of June, and during this period they visited their families in Polk County and visited plaintiff's sister in Houston. After this brief period the plaintiff returned to duty and was sent at once, or almost at once, to Germany and was stationed in Germany for more than three years. He returned to the United States from Germany on May 27, 1952. Shortly after his return to this country the plaintiff went to Onalaska to the home of the defendant's parents and there he met the defendant. They went later to the home of the plaintiff's parents in Livingston, also in Polk County, and on the 24th or 25th day of June separated after a quarrel.

The plaintiff filed this suit on June 25, 1952.

The plaintiff and the defendant have spent only about three weeks together since their marriage.

Afterward, the plaintiff went to Fort Sam Houston, Texas and from there was transferred to Camp Polk, Louisiana. He was still at Camp Polk when this case was tried.

The plaintiff's parents have continuously resided in Polk County during the plaintiff's lifetime, and when this case was tried had their home in Livingston.

The plaintiff said that his home is in and all of his life has been in Polk County; that he has lived in Polk County and claimed this as his home, though in the military service, for more than six months before he filed this petition; that he has claimed Texas as his home all of his life; that he has had no home that he claimed as his home except Polk County, for the last five, ten or fifteen years; that his father's home was his home and he had never had or claimed any county for his residence except Polk County. He said that he had not considered Houston to be his home when he worked at the foundry during the three months immediately prior to his enlistment.

He said further that he and the defendant had no house; that he and the defendant had spent no more than two or three nights in Houston together, on visits to relatives; that he and his wife had never rented a room and had never had a home in Houston; and that he had no home, rooming house, or place to stop in Houston. The defendant said that they had never rented a room or an apartment in Houston.

These additional circumstances afford some confirmation for the plaintiff's claim that his residence has always been in Polk County: In preparing the papers necessary to procure an allotment to the defendant for her support the plaintiff directed that the check for the allotment be sent to the defendant at Onalaska. (These checks

were sent to this address for a time. Later the checks were sent to the home of her sister in Houston, where defendant was residing, but later defendant directed that they be sent to Onalaska. Her reason is stated below). He named his wife as the person to be notified if he were killed, and he stated her address to be Box 25, Onalaska, Texas. His draft board was always in Polk County; he did not transfer from this board to a board in Harris County. The plaintiff and the defendant agreed at the time of their marriage that the defendant would save money from her allotment and that they would build a home in Polk County, at Onalaska or at Livingston.

Some other evidence is referred to in the discussion following.

■ Point 1 is overruled. The circumstances support the trial court's finding that said court had jurisdiction of this suit. The plaintiff's residence within the meaning of Article 4631 was certainly in Polk County until he went to Houston in the latter part of 1945, and the trial court was authorized to find that plaintiff's residence in Houston prior to his enlistment was only temporary. As a soldier, the plaintiff was subject to orders, to go where he was directed, and his movements about and out of the State did not necessarily imply that he had established a new domicile out of Polk County. In fact, there is no conduct of his which shows that he ever attempted to do so; his testimony is that he intended to keep his old domicile and residence, and his actions are consistent with this intention. The defendant says that except for short intervals, that is, week ends and visits in Polk County, she had lived in Houston since the marriage and, indeed, that she had lived in Houston continuously since a date about two years before the marriage; and defendant seems to argue that she had thereby established a residence in Houston for the plaintiff and herself. The plaintiff did know that she had been in Houston because he had sent letters to her there in 1950, 1951 and 1952; but it does not appear that the plaintiff specifically authorized her

to do this. He said that he objected to her being in Houston and told her so. The defendant said that "it wasn't really discussed." There is certainly no evidence that the plaintiff authorized the defendant to establish a home for them in Houston and it does not appear that she had ever told him that she had done so or would do so; and she had not, in fact, established a home in Houston for herself and the plaintiff. According to her testimony she had lived with relatives in Houston, both before and after the marriage, except for a short period when she had resided with the McDade family. She had no permanent abode in Harris County, and we note that, desiring to assure her receipt of her allotment checks which, first sent to Onalaska were later sent to Houston, she directed that they be sent to her at Onalaska. There was no reason why the plaintiff could not keep his old domicile and residence if he wished, and the trial court was authorized to conclude that he had done so. Article 4631, supra; Ivy v. Ivy, Tex.Civ.App., 177 S.W.2d 237; Lewis v. Lewis, Tex.Civ.App., 224 S.W.2d 277; Harwell v. Morris, Tex. Civ.App., 143 S.W.2d 809, at page 816.

Point 3 assigns as error that the evidence is not sufficient to support the decree of divorce on the merits.

The plaintiff's suit is grounded upon Section 1 of Article 4629, Vernon's Ann.Civ. St., which authorizes a divorce for "excesses, cruel treatment, or outrages * * * if such ill treatment is of such a nature as to render * * * living together insupportable."

The parties have no children. They seem to have been together only twice during their marriage, once, at the beginning of this period and next, at the end of this period. As we have stated, they have spent only about three weeks together since their marriage. However, they were not strangers when they married; they had known each other since childhood and had grown up together.

When the parties separated the defendant was receiving an allotment for her support which amounted to $127.50 per month.

The plaintiff said that he had made the allotment voluntarily. The defendant said that she began to receive allotments for her support in June, 1949, and the plaintiff said that this allotment had amounted to $127.50 per month since a time in 1951. What the allotment was before that time the evidence does not show.

The plaintiff testified as follows: (1) "Me and my wife, when I married, we agreed that during the time I was in service, the money that was received from my family contribution, she would save the money and, when I got out of service, we would be able to buy a home and live comfortably." He had inquired of her, when at home, how much money she had. "Each time I would ask her how much money she had, she would never give me a definite answer and, upon the date of our separation, I asked her how much she had, and she told me she didn't have any more, that she spent all her money. * * * When I asked her about the money, she laughed at me and told me she had been running around with other men and went from one beer tavern to another * * *. She told me she had been spending the money on other men * * * No, she didn't tell me she wished I would stay home all the time. She told me she was glad when I was away." He testified further: "I don't have any idea what she did with all of it. I have an idea what she did with most of it because she told me. * * * She told me she spent her money on other men." He testified further: "She told me that she was having fun and she had been spending the money on other men." At that time "we were discussing some money that I needed. * * * Well, I had to buy some clothes, some more clothes."

There is no evidence that defendant had ever made such statements to the plaintiff on any other occasion, and there is no other evidence that she had done the things attributed to her in these statements.

The discussion or discussions between the parties in which these statements were made seem to have occurred throughout the day and, according to the plaintiff, occurred in the home of his parents in Livingston; and only plaintiff and the defendant were present. The plaintiff separated from the defendant the next day, he said, and the parties have not lived together since that time. According to the plaintiff, this suit was filed on the day when the separation occurred.

The plaintiff said that after the defendant made these statements to him he could not live with the defendant. He testified, in effect, that these statements were the only reason he had for separating from the defendant, and that he had loved the defendant until she had made these statements to him.

The defendant had certainly spent some of her money on the plaintiff himself. Thus the plaintiff admitted that while he was in Germany the defendant had sent him $225 at one time and $45 at another time, and that these sums had been sent to him at his request. The defendant said also that she had paid the United States Government $196.66 in the plaintiff's behalf, and she thought that this was income tax levied against the plaintiff. The plaintiff said that he knew nothing about this payment. The defendant said also that she had sent the plaintiff $85 while he was in Germany, but the plaintiff denied that he had received such a payment. The defendant also testified that she had sent the plaintiff $200 on May 29, 1952 and proved a receipt from the Western Union Telegraph Company at Livingston showing that she had done so; but she said that this money had been refunded to her. She said that in January, 1952 the plaintiff had requested some money of her but she had not complied with the request.

The defendant denied that she had made the statements the plaintiff had charged her with and denied that she had been guilty of the conduct attributed to her in these statements. She said that on the day prior to the separation the plaintiff had asked her for money with which to buy parts for a car he had bought and that she had told him she had no bank account at Livingston

but did have one in Houston; that he made no objection and that they had no quarrel; that she did not learn of his intention to seek a divorce until the day when he filed this suit; that nothing had been said about a divorce until then; that he gave her no reason for wanting a divorce and that he just wanted one. Regarding her actions in Houston while he was absent she said that except for a short period of time when she had lived with the McDade family, she had resided with relatives, that she had worked at various establishments in Houston, and that she had been attending a business school there. She said that she loved her husband and was willing to live with him at his station.

Point 3 is sustained. The trial court's decision of conflicts in the evidence ordinarily determines the evidentiary facts on which the judgment of the Appellate Court depends, reviewing a decree of divorce, and the trial court has accepted the plaintiff's version of the events which caused the parties to separate. The evidence authorized the trial court to do this; but the evidentiary facts thus impliedly found must nevertheless, under Article 4632, V.T.C.S., be "full and satisfactory" if the trial court's decree of divorce is to stand. See: Mortenson v. Mortenson, Tex. Civ.App., 186 S.W.2d 297, at page 304. On this record the plaintiff is hardly entitled to a divorce simply because his wife spent his money and preferred his absence to his presence; and if the declarations which the plaintiff said the defendant made to him be viewed only as words spoken by one spouse to another, without also considering whether the words were true or false, we hold that the declarations simply were not enough under the circumstances to authorize a divorce under Section 1 of Article 4629. However, the declarations must also be viewed as evidence of the conduct and of the attitude toward the plaintiff described therein; and the effect of these statements depends also upon this property which said statements have. Some testimony of the plaintiff's which we have set out in our summary of evidence indicates that the plaintiff elected to believe that the defendant really had been spending his money on other men, and the trial court was authorized to find that he did. Nevertheless, we believe that the facts are not "full and satisfactory" within the meaning of Article 4631. The defendant's declarations to the plaintiff, as testified to by the plaintiff, constitute the sole support for the decree. "Running around with other men" is a generality and "going from one beer tavern to another" is more general still. As for "spending the money on other men" the defendant obviously had not been spending all of her money on other men; the plaintiff got some of it and the defendant probably needed some of it, too, for her own support. After all, the sum sent to her was not large. The fact that she complied with requests for money made by the plaintiff is evidence that she had some regard for her marital vows.

We hold that the evidence is insufficient to support the decree of divorce. Garcia v. Garcia, Tex.Civ.App., 185 S.W.2d 227.

Declarations such as those the plaintiff testified to and conduct such as that attributed to the defendant in these declarations may give ground for divorce under Section 1 of Article 4629, but the decisions which we have seen involved cases much stronger in the plaintiff's behalf and the proof made was much more detailed. See: Parker v. Parker, Tex.Civ.App., 165 S.W. 2d 926; Pavell v. Pavell, Tex.Civ.App., 168 S.W.2d 288; Johnson v. Johnson, Tex. Civ.App., 177 S.W.2d 236.

Point 2 assigns error to the sufficiency of the petition, but it is immaterial.

The judgment of the trial court is reversed and the cause is remanded.