**Ben Ray SMITH, Appellant,**

v.

**Carrie Lee (Smith) HORTON, Appellee.**

No. 8020.

Court of Civil Appeals of Texas,
Texarkana.

Sept. 26, 1972.

Rehearing Denied Oct. 17, 1972.

Leslie R. Echols, Cornett, Echols & Biard, Paris, for appellant.

G. C. Butler, Bonham, E. W. Newman, Houston, for appellee.

DAVIS, Justice.

This is a suit for attorneys' fees for Carrie Lee Horton, formerly Carrie Lee Smith, Appellee, against B. Ray Smith, Appellant. The divorce suit was originally filed by two attorneys in Paris, Lamar County, Texas, in March, 1958. These attorneys withdrew from the case. She then employed the present attorneys who are now representing her.

The record is extensively long and very, very hard to understand. Immediately prior to filing the suit, Appellee was treated at the Timberlawn Sanitarium in Dallas, Texas of "a Schizophrenic Reaction predominately of the Paranoid Type which is one of the more serious types of mental illnesses with a rather grave outlook."

At the time she filed the suit, she was making some grave charges against the Appellant about certain threats she swore he made toward her. Shortly after the divorce was filed, Appellant bought their son, Conrad Smith, an automobile. Before the divorce suit was tried, the son was killed in an automobile accident. Appellant had to pay the ambulance service, doctor bills, hospital bills, burial expenses, and erect a tombstone at his grave at a total cost of about $1,200.00. They had one daughter, Virginia Louisa Smith, born November 21, 1941. At the time the suit was filed the daughter was at least 16½, maybe 17 years of age. She soon married. Appellant had to pay child support beginning March 25, 1959, at $150.00 per month, and had to pay alimony beginning either in 1965 or 1966 at $200.00 per month.

Today, Appellant is 74 years of age. Appellee is 20 years his junior.

When Appellee first sued the Appellant for divorce and attorneys' fees, she alleged that a reasonable attorney's fee would be $5,000.00. The attorneys signed the petition and the Appellee signed an affidavit thereto. Since that time, there have been seven amended petitions filed. The first five alleged that an attorney's fee of $5,000.00 would be a reasonable fee. On the day the divorce case went to trial, the attorneys filed a supplemental petition in which they alleged that a fee of $25,000.00 would be a reasonable fee. In the trial of the case, the attorneys did not prove up their fee. When we decided the case and held that the attorneys' fees had not been proven, we pointed out that the Appellee had alleged in her petition that a reasonable fee of $5,000.00 would be sufficient.

This court held that there was no proof that she entered into a contract to pay her attorneys' fees of $25,000.00. We held that there was no evidence as to the amount of the fee that was to be paid to the attorneys. We held that "the amount of the fee is a question of fact that must be plead and proved."

In their seventh amended original petition the attorneys alleged that a reasonable fee would be $40,000.00 and Appellee had agreed to pay her attorneys that amount for their services. They alleged a fee of $2,500.00 would be a reasonable fee in the event the case was appealed to the Court of Civil Appeals; and a fee of $2,500.00 would be a reasonable fee if the Appellant filed an application for writ of error to the Texas Supreme Court. The attorneys alleged the sum of $2,500.00 would be a reasonable fee for representing her in the hearing on the final account of the receivership pending in this cause; a $2,500.00 attorneys' fees would be reasonable if an appeal was taken by the Appellant to the Court of Civil Appeals and an additional $2,500.00 would be a reasonable fee if application was made by Appellant for a writ of error to the Texas Supreme Court.

The trial judge who granted the divorce and appointed the Receiver made the provision in his judgment that the Receiver shall pay from the proceeds of the sale, or sales, of the Community Property of Appellee and Appellant the mortgage indebtedness due the Federal Land Bank of Houston, Texas, shall pay to Appellee one-half of the proceeds from said sale, or sales, remaining after the payment of the indebtedness due the Federal Land Bank of Houston, and all costs expended herein, including the expenses and fees of this Receivership. The trial judge further provided that the Receiver shall pay any just and binding claim against the community estate of the Appellee and Appellant, if any, made or claimed by the Liberty National Bank in Paris, Texas, Granville C. Farmer, all other indebtednesses, and shall

pay the balance of the proceeds from said sales to the Appellant.

In the trial of the divorce case, Appellee gave much testimony. She testified that Appellant was trying to cheat and defraud her out of her share of the community estate. The evidence showed there were 2,148.744 acres of land. The Appellee swore that this land was worth $250.00 per acre. That would make the total worth amount to $537,186.00, in excess of one-half million dollars. The Receiver first made the report that he had sold the land for $260,000.00. For some reason or other, the sale fell through. He then reported a sale of the property for $200,000.00. The Appellant contested the sale of the property for that price alleging that it was not enough. Anyway, the sale was approved by the trial court. Out of the sale of the land, the Receiver made a payment to Appellee of $100,000.00, NOT IN KEEPING WITH THE JUDGMENT OF THE TRIAL COURT.

After the judgment of divorce became final, the attorneys for the Appellee did not proceed to try their suit for attorneys' fees. They filed their sixth amended petition on September 25, 1969. They filed their seventh amended original petition on March 16, 1970. Therefore, they did not seek to recover their attorneys' fees until seven years, one month and fifteen days after it was severed from the original divorce proceedings. Then, on the day the case went to trial, attorneys for Appellee filed a "Motion in Limine." They sought by this motion to restrain and refrain the Appellant from mentioning in any interrogatories, or questions, directly or indirectly, in any manner whatsoever, concerning any of the material hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence, AND OUTSIDE THE HEARING, of all prospective jurors, and jurors ultimately selected in this case, in regard to any alleged theory of admissibility of such matters. They alleged in this motion that the Appellee had paid attor-

neys' fees and/or reimbursements of expenses in connection with their representation of her in her divorce suit. The trial court granted the Motion in Limine, would not permit Appellant to ask any questions in the presence of the jury about the payment of the attorneys' fees and reimbursements in the presence and hearing of the jury, and the Appellant had proved up his bill of exceptions in the Statement of Facts while the jury was absent.

The case was tried before a jury. The jury answered all special issues in favor of the Appellee. The trial court signed and entered a judgment in favor of Appellee on April 22, 1970. Appellant filed a motion for new trial and an amended motion for new trial. The amended motion for new trial was filed on May 21, 1970. It was overruled by operational law 45 days thereafter. Rule 329b, Texas Rules of Civil Procedure. Appellant has perfected his appeal and brings forward many points of error.

Appellant is a lawyer. He has had several lawyers who have apparently tried to represent him in the case. But, for some reason or other, they have been either discharged or removed from the case.

Actually, the Motion in Limine was an admission by the attorneys for Appellee that they had been paid their attorneys' fees and the costs incurred in representing the Appellee in the divorce proceedings. At least it raised a question of fact. The evidence actually showed the Appellee has been paid $100,000.00 (one-half of the sale of the real estate) which is far in excess of what the trial court ordered. Of course, this writer has often wondered by what authority a "Motion in Limine" can be filed. There is no provision for the filing of any such motion in Texas Rules of Civil Procedure, Civil Statutes, Penal Code or the Code of Criminal Procedure. If a Motion in Limine is to be given such great authority, there should be a rule promulgated in the Texas Rules of Civil Procedure, or Civil Statutes enacted by the Texas Legislature to provide for same.

Appellant first takes the position that there is no evidence by which he can be charged an attorney's fee. There were six attorneys that testified for the Appellee. But, first, we must point out that the Appellee did not testify that she entered into a contract whereby she agreed to pay her attorneys a reasonable attorney's fee for their services in said suit. There is not testimony at all from the attorney who lived in Houston that he did any work at all in the prosecution of the divorce suit. We think some testimony from him is mandatory.

Appellee offered five expert witnesses, attorneys at law, who testified in the case. They estimated a reasonable fee to run anywhere from $85,000.00 to $150,000.00. One of the lawyers testified that he had been in the practice of law for 2½ years, had tried 200 contested divorce cases and 125 other cases. He estimated that a reasonable fee for the divorce proceedings to be $125,000.00. This lawyer lived in Sherman, Texas. Another lawyer who lived in Sherman, Texas, testified as an expert witness and he answered the hypothetical question that a reasonable fee would be between ninety and one hundred and ten thousand dollars. He also was a resident of Sherman, Texas. Another lawyer from Bonham, Texas gave expert testimony in the case, and he estimated, in reply to a hypothetical question, that a reasonable attorney's fee would range from seventy-five to ninety thousand dollars. Another lawyer from Greenville, Texas, gave expert testimony in the case and in answer to a hypothetical question, he estimated that a reasonable attorney's fee would run from eighty-five to one hundred and ten thousand dollars. A lawyer from Denison, Texas, gave expert testimony in the case and in answer to a hypothetical question, he estimated that a minimum attorney's fee of $100,000.00 would be a reasonable fee in this divorce proceeding. All these lawyers estimated what a reasonable attorney's fee would be for the prosecution of an appeal to the Court of Civil Appeals and an appli-cation for writ of error to the Texas Supreme Court. It ranged from $1,500.00 to, I believe, $5,000.00. One of the lawyers estimated that a reasonable fee for the final accounting in the Receivership would be $1,000.00. All of this testimony was objected to prior to its admission for several reasons. Without listing the various grounds upon which each objection was made, the objections should have been sustained. The trial court overruled each objection. We don't believe that either of these lawyers testified that they had ever received any more than four or five hundred dollars in any one divorce case.

The Appellant and his attorney testified in the case. They estimated that a reasonable fee would be nothing and under no condition would it exceed $5,000.00. A very prominent lawyer from Paris, Texas, testified in the case in behalf of the Appellant, and he estimated that a reasonable fee would be $5,000.00, including the cost of the appeal to the Court of Civil Appeals and the Texas Supreme Court. Another lawyer who lives in Fort Worth, Texas, who formerly practiced law in Paris, Texas from 1936 to 1964, testified in behalf of the Appellant, and he estimated a reasonable fee in the divorce proceedings to be $1,500.00. The lawyer who is representing the Appellant in this case testified and he estimated a reasonable fee in this divorce proceeding to be between $3500.00 and $5,000.00. He is also a lawyer in Paris, Texas. Another very prominent lawyer of Paris, Texas, who is 68 years of age, has been practicing law since 1923 in Paris, Texas, and is now serving as County and District Attorney, gave expert testimony that a reasonable attorney's fee in this divorce proceeding would amount to about $3500.00.

There is a broad difference in the estimated fees of an attorney who practices law in Paris, Texas, and those who practice elsewhere. Be that as it may, none of the testimony that was offered by the appellee or the Appellant becomes pertinent to our decision in this case.

The attorney who testified and helped to represent the Appellee merely made an estimate of the number of hours that he and the other attorney put in. He did not keep an office manual, notebook, pocket notebook, or anything else in his office or in his pocket or briefcase to indicate the number of hours that he worked on this case. He did not keep any manual, notebook or other record of the number of trips they made and the hours they spent. He merely made an estimate. An office manual, or notebook, is as essential to a lawyer, or law firm, as the Texas Rules of Civil Procedure, the Black Statutes, and the Supplement to each of them, are essential to a lawyer, or lawyers, when they make charges for service and brief their cases. The lawyer who testified merely said that he looked at the files in his office and merely guessed at the number of trips that they made, and estimated they put in at least 2,500 hours in work on the case. In addition to the manual, or notebook, a lawyer needs to have a handbook that he carries in his pocket. He can use this handbook to make notations of the time he leaves his office, the hours spent, the work done, and when he returns. There is no such evidence in the record. There is an article in Vol. 35, no. 7, T.B.J. 713 by Mrs. Dorothy M. Swicord, on the "Office Manual—A Time Saver" from which we quote the following:

"Judge Paul Buchanan, in a paper before the Fourth National Conference on Law Office Economics and Management, summarized the manual's job as follows: 'The basic idea of a Manual is to create a guide, a textbook, techniques and a how-to-do short handbook that puts on paper the totality of the lawyer's knowledge on this subject in 'an organized easy-to-use way that can be followed by an intelligent layman. All procedures are broken down in their systematic components, and additional comment is used in a way to guide a layman through the normal procedures and the abnormal procedures without reference to the lawyer except for highly unusual situations.

Judge Buchanan further explained that by the use of present personnel to help create these manuals, not only will the attorney refresh his own recollection of necessary steps and develop useful checklists, but he will increase his understanding of procedures and may well pick up useful hints the secretary has developed doing parts of the job through the years. This same principle is true in the preparation of an Office Procedure Manual.'"

Since there was no contract proved between Appellee and her attorneys, we think that the Appellant should have been permitted to prove the amount of the fees that she had paid her attorneys, including the costs for their reimbursement. Neither did the attorneys prove that the Appellee was acting in good faith and upon probable cause and that by reason of the acts of the Appellant that he was bound to pay her a reasonable attorney's fee. Allegations and proof to that effect are required. 3 Speer's Marital Rights in Texas 319, Sec. 886, p. 323, and the authority cited therein. Sailes v. Sailes, CCA, 1965, 394 S.W.2d 248, no writ. 20 T.J.2d 626, Secs. 302 and 303; 20 T.J.2d 635, Sec. 310; 20 T.J.2d 688, Sec. 362.)

The testimony showed that the Appellee was employed and was making $75.00 per week; apparently, take-home pay. This would amount to a total of $3,900.00 per year. Appellant offered his income tax return in evidence which showed his annual income to be less than $1,300.00 per year. The courts have held that where his wife's income exceeds the amount of income of the husband, she is not entitled to an attorney's fee. Allen v. Allen, CCA, 1962, 363 S.W.2d 312, no writ.

Appellant is now 74 years of age. According to the record in the case, Appellee has already received $100,000.00 out of the community estate. Appellant has had to pay the expense of the treatment, death and burial of his son in excess of $1,200.00; and the costs of an appeal to

the Court of Civil Appeals on two occasions which amounted to about four thousand dollars. He has hired several lawyers and undoubtedly had to pay them a fee. There was due the Federal Land Bank of Houston in excess of $15,000.00. There was due the Liberty National Bank of Paris, Texas, in excess of $14,000.00. He is indebted to Granville C. Farmer for some amount, the exact amount of which is unknown. He is indebted to law book companies in excess of $1,000.00. He has a lawyer representing him in this appeal. He will have to pay him a fee. He is in poor health, although the trial judge would not permit him to make that proof. We think this was error. He will have to pay his part of the attorney's fee in the Receivership proceedings. Appellee says he will also have to pay the costs in the Receivership proceedings, including the final account. The Receiver's commission, and other costs, will amount to about $12,000.00. We feel sure the attorney for the Receiver will make a charge of at least $15,000.00. As the record now stands, that

will have to be taken out of the community estate of the Appellant. The total amount of this cost runs in excess of $62,000.00, plus the amount he has paid the attorneys and will have to pay Mr. Farmer. We will estimate these charges to run about $20,000.00, making a grand total of about $84,000.00. If the Appellant has to pay $47,500.00 attorneys' fees in the divorce case, it will leave him in the red. He will be flat broke, of old age, unable to work, and unable to pay his bills in the future. We, as an Appellate Court, are supposed to "TRY TO DO JUSTICE." We are not supposed to say what we would allow if the matter had been originally submitted to us, but whether the finding of the trial judge amounted to an abuse of his discretion. Garcia v. Cook, CCA, 1963, 366 S. W.2d 873, error dism'd.

 In a prior appeal this court appears to have left open and unsettled the question of appellant B. Ray Smith's liability for attorneys' fees.* In this present opin-

* In the previous appeal (No. 7704 in this court, application for writ of error to the Supreme Court was dismissed for want of jurisdiction), the unpublished opinion, with respect to attorney fees, said:

"By their point 4, appellants say the trial court erred in entering a judgment against appellant B. Ray Smith for attorneys' fees, because there was no evidence; and, in the alternative, the evidence is insufficient. Appellee alleged in her petition that a reasonable fee of $5,000.00 would be sufficient. She likewise alleged in all her amended petitions that a reasonable fee would be $5,000.00, except her last amended petition that was filed on the day the case went to trial. In this petition she alleged a reasonable fee would be $25,000.00. There was proof to show that she had no money to pay the lawyers. But there is no proof that she entered into a contract to pay them $25,000.00. There is no evidence as to the amount of the fee that was to be paid to the attorneys. The amount of the fee is a question of fact that must be proved. Appellee put an attorney on the witness stand who testified what would be a reasonable 'contingent' fee. The writer has not been able to find any case where lawyers

representing somebody in a divorce case can charge a contingent fee, THE AMOUNT MUST BE PROVED. 20 Tex.Jur.2d 635, Sec. 310, and the authorities cited therein. A fee of $1,000.00 was held not to be excessive in a bitterly contested case where the community estate involved was shown to be of the value of $250,000.00. Pavell v. Pavell (CCA 1943) 168 S.W.2d 288, N.W.H. The appellee testified that the 2148.774 acres of land that they owned was worth $250.00 an acre. This would make the land worth in excess of one-half million dollars. There is less than $15,000.00 due against the property. If she receives one-half of this property she will have sufficient money with which to pay her attorneys. In the case of Edsall v. Edsall (CCA 1951), 240 S.W.2d 424, N.W.H., the court held that where the wife receives a substantial amount of property in the divorce the trial judge did not abuse his discretion in refusing to allow her attorneys' fees. In that case, appellant received approximately $30,000.00. The court held that she was able to pay her attorneys' fee. But, be that as it may, we have decided to sever the question of attorneys' fee and reverse and remand the same to the trial

ion we hold as a matter of law, the trial court should not have awarded appellee Carrie Lee Horton any attorney fees because the conditions and needs of the parties as shown by the undisputed facts and circumstances do not support an award. Such disposition approximates evenhanded justice and leaves relatively equal shares of the community assets in the hands of each party and constitutes progress toward bringing this twelve-year litigation to an end.

The record shows without question that:

1. The community assets of the marriage (there is no separate property) were sold by the receiver for $200,000.-00;

2. The appellee, Carrie Lee Horton, was immediately awarded and paid $100,000.00 thereof;

3. The trial court, several trial judges presiding in succession, ordered deducted from appellant B. Ray Smith's share of the proceeds of the sale

(a) All community indebtedness;

(b) All costs and expense, present and future, incident to the divorce, child support, alimony, and the trespass to try title suit and appeals therein, inaugurated to determine community assets;

4. Appellant, S. Ray Smith, is 74 years of age and his earning potential is negligible;

5. Appellee, Carrie Lee Horton, is some twenty years Smith's junior;

6. One of the children got killed in a car wreck soon after the divorce was filed; the other one got married;

7. Payment of the entire cost of the litigation, plus the former wife's attorney fees, will substantially consume all appellant Smith's community share of the assets.

These facts and circumstances are distinctive to this case and distinguish it from other attorney fee cases that have been cited.

■ As a precedent, it appears just that attorney fees should not be awarded to the wife when her share is ample for reasonable support and to pay a reasonable attorney's fee. Recovery of the attorney fee assessed herein from the aged husband, who has slight potential for earning a modest living, will leave him little or no money or other resources.

In the appellee's supplemental brief citing the case of Braswell v. Braswell, CCA 1972, 476 S.W.2d 444, error dism'd, in which the Trial Court allowed the wife a fee of $250,000.00 there was a broad discrepancy between the amount of property that she received from the community estate and that received by her husband. To Mrs. Braswell, the Trial Court awarded her community assets, including $250,000.00 attorney's fee, a grand total of $1,722,296.-00. The total value of the estate that was awarded to Mr. Braswell, less the attorney's fees, amounted to $6,251,796.00. The evidence in that case cannot be compared to the evidence in the case at bar.

Appellant takes the position that if the Appellee did contract to pay the attorneys a fee of $47,500.00, such a fee would be exorbitant and unreasonable. If such an agreement was made, we could not set it aside as a matter of law. As a matter of fact, the validity of the preexisting agreement, if any, was so unfair and unreasonable that a court of equity should intervene

court for a new hearing thereon. Great American Reserve Ins. Co. v. Britton [406 S.W.2d 901] (TSC 1966 ( ). In the event the trial court should find that the appellee is entitled to have her attorneys' fees paid he will allow her a

reasonable fee for the securing of the divorce. The denial of an attorneys' fee is not per se and an abuse of discretion. 20 Tex.Jur.2d 626, Sec. 303. The point of error is sustained."

and set the agreement aside as a matter of fact. There is an interesting opinion written by Justice Walker of the Texas Supreme Court in Archer v. Griffith, Tex. Sup.Ct., 1964, 390 S.W.2d 735.

We will say this, however, that the attorneys for the Appellee are not entitled to any fees in the Receivership proceedings as attorneys' fees for the divorce.

For the reasons set out hereinabove, the judgment of the trial court is reversed and judgment is here rendered that the Appellee take nothing.